NEIL ABERCROMBIE, Plaintiff-Appellee, *v.* DAVID C. McCLUNG, Defendant-Appellant.

NO. 5391

JULY 25, 1974

RICHARDSON, C.J., KOBAYASHI, OGATA AND MENOR, JJ., AND CIRCUIT JUDGE SODETANI IN PLACE OF LEVINSON, J., DISQUALIFIED

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by State Senator David C. McClung (appellant) from a denial of the trial court of appellant's motion for summary judgment filed in a slander suit brought by Neil Abercrombie (appellee).

We reverse.

The appellant contends that the statements made by him, in his legislative office next to the Senate chambers during an interview by a newspaper reporter elaborating on a speech made by the appellant to the Senate assembled, can be construed as an exercise of his legislative function and thus absolutely privileged.

The appellant, in his capacity as president of the Senate of Hawaii, opened the Sixth Legislature with a speech to the Senate in which he expressed concern about the quality of education in Hawaii. The appellant directed his comments toward higher education in relation to the amount of tax

money being spent for that purpose. In his speech the appellant stated that many legislators were "beginning to wonder whether part of the faculty in our University of Hawaii has any commitment whatsoever to that institution."

Several hours after appellant's speech, newspaper reporter Douglas Boswell (reporter) sought an interview and did interview the appellant in appellant's personal Senate office and asked the appellant if he would "identify the people he was talking about or the groups on campus he was talking about." In response to this question, the appellant gave the reporter several names, including that of the appellee, indicating that they were some of the members of the faculty of the University of Hawaii that he had reference to in his speech.

The newspaper article, based on the interview, stated, *inter alia,* as follows:

In an address to the Senate, McClung dropped a cool warning aimed at a segment of the faculty, and in a subsequent interview he reeled off a list of those he singled out as targets of his talk.

McClung said his speech referred to at least five faculty members, including Helge Mansson, Thomas Gladwin, Oliver Lee, Neil Abercrombie and Larry Jones, all, he said, involved in the occupation of the campus ROTC building last year.

. . . .

"The fact that a Faculty Senate committee found them guilty of violating academic freedom, behind which they have been hiding, indicates a lack of responsibility," he said.

"Because they get so involved time-wise in their cause celebres, they find themselves with little time for the students they are supposed to educate," McClung said.

"They then point a finger at forces outside themselves, such as Administration and elected officials, as the cause of students being unhappy with the relevancy of the education they are receiving."

The facts show that, soon after the interview, the appellant realized that he had erred in including the appellee as a

member of the group which he had condemned. The appellant, however, made no effort to correct the error.

The Constitution of the State of Hawaii, Article III, Section 8, states in pertinent part:

### PRIVILEGES OF MEMBERS

Section 8. No member of the legislature shall be held to answer before any other tribunal for any statement made or action taken in the exercise of his legislative functions; . . .

Appellee contends that, although the framers of the Hawaii Constitution intended that the above cited legislative immunity clause be construed in its "broadest sense", the framers did not intend to extend the legislative privilege of absolute immunity to statements made or actions taken outside any official legislative proceedings.

Appellee refers this court to several federal cases dealing with the interpretation of the Speech or Debate clause of the Federal Constitution. We are of the opinion that the federal case law, construing the "Speech or Debate" clause, is not helpful in the consideration of the phrase "legislative function".

Article I, Section 6, of the United States Constitution is substantially and critically different from Article III, Section 8, of the Hawaii Constitution. The relevant parts of Article I, Section 6, are:

Section 6. The Senators and Representatives shall . . . be privileged . . . *for any Speech or Debate in either House*, . . . . (Emphasis added.)

The legislative history and the very wording of the Hawaii Legislative Immunity Clause differs from that of the federal immunity clause. The Hawaii Immunity Clause has been in effect, without challenge, since August 21, 1959, the date of statehood of Hawaii.

The instant case is a case of first impression for this court.

The record of the proceedings of the Hawaii Constitutional Convention of 1950 which drafted the clause in question is helpful in construing said Article III, Section 8.

598

After reading Article I, Section 6, of the Federal Constitution, the chairman of the convention asked the delegate submitting Article III, Section 9[1] for approval:

CHAIRMAN: Is your section as broad as the immunity conferred under the Federal Constitution?

HEEN: Broader.[2]

And, in response to a question for clarification on what "legislative function" would encompass, delegate Heen stated:

HEEN: Of course, "in the exercise of his legislative functions" would cover a situation where a statement is made in committee because he is exercising his legislative function when he sits in a committee and the committee is operating under the authority of the house. . . .

CHAIRMAN: Delegate Heen, may the Chair ask you a question? Will you state whether or not the immunity will apply whether you are sitting in committee or sitting in session? It's the same thing, as the Chair understands it.

HEEN: No, if you're sitting in session, that's one thing, that's regular session. But if you are sitting in a committee, you're still exercising legislative functions.

CHAIRMAN: Then the immunity applies?

HEEN: Immunity applies.

LOPER: What about a public hearing?

CHAIRMAN: That was the Chair's question, that's in committee and the immunity applies.[3]

Finally, immediately prior to the vote on adoption, the following discussion is reflected by the record:

SHIMAMURA: What would be the situation of a member of the legislature who makes a speech, say at the legislative council meeting, if we have such a council? Would his immunity apply to such a speech if he makes some ordinarily — let's rather say a statement that is ordinarily defamatory, would he be still immune?

---

[1] Original Section 9 was subsequently renumbered as Section 8. However, the wording of the section remains unaltered.

[2] 2 *Proceedings of the Constitutional Convention of the State of Hawaii* 1950, at 147.

[3] *Id*. at 148.

CHAIRMAN: No; there would be no immunity unless it is expressly conferred in the section creating the council.

TAVARES: It is my understanding that it would depend upon whether he was performing a legislative function or not. I am not prepared to say, without studying that further, that just because it was a legislative council meeting that there wouldn't be immunity. I believe it wouldn't be as broad possibly but if it was in the exercise of legislative functions, as the court should find, then I think this would give immunity.

CHAIRMAN: I think the correct rule would be that it would stand on the same basis as the testimony before any other public body. There is a certain immunity, as you know, if you testify before the P. U. Commission, or court.

SHIMAMURA: Well, that's just the point I mean, because if it's in the performance of the legislative function presumably the question would arise whether or not that legislative immunity would cover that situation. That's why I raise the point. The section as it stood prior to the deletion of the words "in each house," would limit it to his deliberations, his speeches, and his actions in the house.

HEEN: In the exercise of legislative functions, it might be in a committee so long as he is exercising his legislative functions, and much of the function of the legislature is performed in committee, so that if a legislative council can be regarded as a committee of the legislature that immunity might extend to the members of that council so long as they are all members of the legislature who are members of that council.

CHAIRMAN: The proposed amendment would broaden the immunity in other words.

A. TRASK: This would, of course, extend to holdover committee legislative activity, would it not?

CHAIRMAN: That's correct. Are you ready for the question?

SAKAKIHARA: Would you be kind enough to restate

the question.

CHAIRMAN: The question before the body is the deletion from Section 9, fifth line, after the words "legislative functions," delete the words "in either house," and the purpose of the deletion is to broaden the immunity rather than to restrict it. All those in favor signify by saying "aye." Contrary. Carried.[4]

We are of the opinion that the above record of the proceedings of the Constitutional Convention shows that the delegates to the Convention purposefully intended to broaden the scope of the legislative immunity and further intended for the courts to finally determine the parameter of the legislative immunity by construing the clause "the exercise of his [legislator's] legislative function" on a case by case basis. The delegates did not place any restrictions premised on time and place of a legislator's exercise of his legislative function.

In the instant case, appellant's speech given to the assembled Senate was on a subject clearly of legitimate legislative concern, that is, in the exercise of his legislative function. The appellant's clarifying statements, though erroneous factually, dealt with a subject matter that was of legitimate legislative concern.

We are of the opinion that when a legislator is asked to clarify a speech or a statement made by him in a forum of the legislature on a subject matter of legitimate legislative concern, a subsequent clarifying statement by the legislator, though not made in a forum of the legislature, not only fulfills his duty to keep the public informed, but serves the public interest. See Barr v. Mateo; 360 U.S. 564, 574-75 (1959); Hill Parents Association v. Giaimo, 287 F.Supp. 98, 100 (D. Conn. 1968); Preston v. Edmondson, 263 F.Supp. 370, 373 (N.D. Okla. 1967). We have no doubt that strong, fearless and responsible legislators and an informed public are necessary pillars of a viable democracy.

We are of the further opinion that, though appellant's clarifying statements were erroneous and, assuming ar-

---

[4] 2 *Proceedings of the Constitutional Convention of the State of Hawaii* 1950, at 180.

guendo they were slanderous, the statements were made by the appellant in the exercise of his legislative function and are absolutely privileged and the appellant cannot be held to answer by the Judiciary.

Reversed and remanded for the entry of a grant of appellant's motion for summary judgment.

*Tobias C. Tolzmann*, Special Deputy Attorney General, for defendant-appellant.

*David C. Schutter* for plaintiff-appellee.