Rosella WOOLDRIDGE, Plaintiff,

v.

The COMMONWEALTH OF VIRGINIA et al., Defendants.

Civ. A. No. 78–0267–R.

United States District Court, E. D. Virginia, Richmond Division.

July 21, 1978.

Saad El-Amin & Associates, Richmond, Va., for plaintiff.

John A. Rupp, Kenneth W. Thorson, Asst. Attys. Gen., John R. Haymes, Jr., Asst. City Atty., Richmond, Va., for defendants.

### MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Rosella Wooldridge, who alleges that she is a black female ordained rabbi and a resident of Henrico County, Virginia, brings this complaint to challenge the constitutionality of certain actions taken by the Department of Public Welfare of the City of Richmond, hereinafter referred to as "Welfare Department", and its employees while evaluating her suitability to adopt a child formerly residing in her home as a foster child under the supervision of the Welfare Department. Named as defendants are William L. Lukhard, Director of the Department of Welfare of the Commonwealth of Virginia; the Welfare Department of the City of Richmond; and Clinton Strane, Jane Talley and Linda Morris, all of whom are employed by the defendant Welfare Department. Jurisdiction is alleged pursuant to 28 U.S.C. § 1343. Plaintiff seeks declaratory and monetary relief.

The facts recited in plaintiff's amended complaint are essentially as follows:

On October 20, 1969, the defendant Welfare Department placed in plaintiff's home on a foster care basis a five day old male child named Paul Nathaniel Lewis, whom plaintiff renamed "Marty." In June of 1975, plaintiff expressed her intention to adopt Marty. Defendant Morris, a member of the Welfare Department's adoption unit, was assigned to conduct a preliminary investigation to determine the financial ability, moral suitability and overall appropriateness of plaintiff as an adoptive parent. According to plaintiff's complaint, Ms. Morris initially appeared to favor the adoption, but, sometime in late August or early September of 1975, plaintiff alleges that Ms. Morris became antagonistic and began to probe into her religious beliefs and sources of income. Plaintiff refused Ms. Morris's request to see the books and records of plaintiff's place of employment. In June of 1976, Ms. Morris scheduled a psychological examination for Marty.

On August 26, 1976, pursuant to a petition and summons signed by the Honorable Kermit V. Rooke, Judge of the Juvenile & Domestic Relations District Court of the City of Richmond,[1] defendants Morris and Talley, accompanied by Henrico County police officers, removed Marty from plaintiff's home. Thereafter, the child was placed in another foster home to which plaintiff was denied all visitation rights. Plaintiff instituted state court proceedings in an effort to reverse the Welfare Department's decision to remove Marty from her home and to deny her visitation rights, all to no avail. Plaintiff states that she was also unsuccessful in several subsequent applications to the Courts for Marty's return or for permission to visit him. She further alleges that the weight and stress of her ordeal caused her to suffer a heart attack on September 10, 1977 which she alleges has disabled her and caused her a substantial loss of income.

Plaintiff's petition to adopt Marty was filed in April of 1977 in the Circuit Court of the City of Richmond. On April 14, 1977, the Circuit Court, per Judge James Sheffield, entered the following order:

Upon consideration of the petition of ROSELLA M. WOOLDRIDGE to adopt the above named infant and change its

---

1. The petition, dated August 25, 1976, charged that Marty was "without proper parental care and guardianship in that his welfare demands an adjudication as to his disposition, control and custody." A copy of the petition is attached to plaintiff's original complaint.

name, IT IS ORDERED FILED, and the Clerk shall forward a copy of the petition with this order to the Board of Public Welfare of the City of Richmond for investigation of and report on the pertinent facts, and to the Commissioner of Public Welfare [defendant Lukhard] for his recommendation regarding the action to be taken by the court based on the Agency's report.

On October 25, 1977, based on the investigative report prepared by the Welfare Department and signed by defendants Strane, Talley and Morris, defendant Lukhard recommended to the Circuit Court that plaintiff's petition for adoption be denied, with prejudice. That recommendation has not yet been acted upon by the Circuit Court. Hence, plaintiff's petition for adoption is still pending.

In this action, plaintiff seeks a declaratory judgment that the actions of the defendants, individually and in concert, have violated her rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Freedom of Religion Clause of the First Amendment of the Constitution of the United States. Additionally, plaintiff seeks punitive and compensatory damages.

The defendants have filed motions to dismiss, to which the plaintiff has responded. For the reasons which follow, defendant Lukhard's motion to dismiss the suit as to him will be granted [2] and the balance of the motions to dismiss will be denied.

### I.

Defendant Lukhard is sued in both his individual and official capacities. In his official capacity, he is not subject to any suit for damages because he is an officer of the Commonwealth of Virginia. Any judg-

ment against him for monetary damages would necessarily have to be satisfied out of the Commonwealth's treasury. Such suits against an unconsenting state are barred by the Eleventh Amendment to the Constitution. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Since the Commonwealth of Virginia has not consented to be sued in this matter, the plaintiff's claim against defendant Lukhard in his official capacity must be dismissed.

In his individual capacity, defendant Lukhard contends that he is clothed with absolute immunity because he was acting pursuant to a valid court order. The factual basis for this contention is the Richmond Circuit Court's order of April 14, 1978 directing him to submit a recommendation to that court concerning the plaintiff's petition for adoption.

The Court concurs with Lukhard's legal position and holds that he is absolutely immune from any damage action arising out of his recommendation regarding plaintiff's petition for adoption. As he was acting pursuant to a valid court directive in preparing and submitting his recommendation to the Circuit Court, his position was analogous to that of a probation officer submitting a probation report in a criminal case. Probation officers have repeatedly been held to be immune from monetary liability under such circumstances. *See, e.g., Douglas v. Muncy,* 570 F.2d 499, 501 (4th Cir. 1978); *Thompson v. Burke,* 556 F.2d 231, 236 (3rd Cir. 1977) (citing numerous cases); *Burkes v. Callion,* 433 F.2d 318 (9th Cir. 1970). Since the only factual allegation against defendant Lukhard concerns the submission of his recommendation to the Richmond Circuit Court, the action

**2.** Defendant Lukhard has also filed a motion requesting this Court to abstain from exercising jurisdiction over this case pending final disposition of the plaintiff's petition for adoption in the Richmond Circuit Court. In view of the Court's ruling on defendant Lukhard's motion to dismiss, it is not necessary to reach the issue of abstention.

against him for monetary damages in his individual capacity must be dismissed.[3]

## II.

The Welfare Department, Strane, Talley and Morris have jointly filed a motion to dismiss this action on grounds that the complaint fails to state a cause of action on which relief can be granted.[4] As affidavits and other matters outside the pleadings are attached, the motion will be treated as one for summary judgment. *See* Federal Rule of Civil Procedure 12(b)(6).

■ Defendants first attack plaintiff's claim under 42 U.S.C. § 1981, stating: "Not one scintilla of racial discrimination appears in the complaint nor is present or evident in defendant's actions throughout the entire period under consideration." (Defendants' memorandum filed April 2, 1978, at 2.) The Court views the matter differently. While the major theme of plaintiff's complaint is unlawful religious discrimination, plaintiff asserts that her religious beliefs and practices "are particularly unsettling to the de-

fendants, *given the racial and sexual identity of the plaintiff.*" (Amended Complaint ¶ 33) (emphasis added). The Court considers this to be an adequate factual allegation of racial discrimination to support a § 1981 action at this stage.

■ Regarding the defendants' flat assertion that there is no evidence of racial discrimination, the Court is of the opinion that there are still genuine issues of material fact which make a summary judgment inappropriate under the present state of the record.

■ Defendants next attack plaintiff's claim under 42 U.S.C. § 1983. Defendants' primary contention is that the Commonwealth's removal of a foster child from its foster home does not violate the Due Process Clause. However, the United States Supreme Court explicitly left open the due process issue faced here in the relatively recent case of *Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 847, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). As the present record does not

---

**3.** The dismissal of the action for damages does not necessarily dispose of plaintiff's prayer for declaratory judgment because judicial and quasi-judicial immunity may not extend to suits for declaratory relief. *See Fowler v. Alexander,* 478 F.2d 694, 696 (4th Cir. 1973); *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 146 (E.D. Pa.1977). However, it is well established that judicial power to entertain actions solely for declaratory relief is discretionary. *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *Maryland Casualty Co. v. Boyle Construction Co.,* 123 F.2d 558, 562 (4th Cir. 1941). In the Court's view, this is an appropriate situation in which to decline to entertain the action for declaratory relief. Defendant Lukhard is immune from suit for damages, no injunctive relief is sought, and a declaratory judgment does not appear to be a necessary predicate for any future action to be undertaken by the plaintiff. It follows that it would serve little purpose to keep defendant Lukhard in the suit solely on the strength of plaintiff's prayer for declaratory relief, especially since the pleadings with respect to defendant Lukhard are so conclusory and lacking in factual underpinnings that it is doubtful they could support a cause of action under the Civil Rights Act. *See Granville v.*

*Hunt,* 411 F.2d 9, 11 (5th Cir. 1969). Accordingly, defendant Lukhard will be wholly dismissed from this action.

**4.** This motion to dismiss was initially filed by the City of Richmond (together with Strane, Talley and Morris) in response to plaintiff's original complaint, which named the City as a party defendant. For some reason, plaintiff's amended complaint dropped the City as a defendant and added the Welfare Department. Nevertheless, the City responded to plaintiff's amended complaint by renewing its motion to dismiss. As plaintiff has apparently substituted the Welfare Department for the City as a defendant, the Court construes the City's renewed motion to dismiss as the motion of defendant Welfare Department. In light of the Supreme Court's decision last Term in *Monell v. Department of Social Services,* ⸻ U.S. ⸻, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), however, the disposition of the motion to dismiss would be the same even if the Court treated the motion as the City's.

In view of the confusion, the plaintiff will be given leave to add the City as a party defendant if she be so advised.

lay an adequate factual foundation for an appropriate legal analysis of the due process issue, summary judgment is in the Court's view inappropriate as to plaintiff's § 1983 claim.[5]

Finally, defendants urge that no facts have been alleged to support plaintiff's claim under 42 U.S.C. § 1985, the conspiracy section of the Civil Rights Act. The Court again takes a different view. Defendant Strane directly supervised defendants Talley and Morris. Defendants Talley and Morris allegedly went to plaintiff's home together to remove Marty from plaintiff's custody. Although defendant Morris was the primary Welfare Department employee assigned to Marty's case, it was defendant Talley who went to plaintiff's home to remove Marty when Marty sought refuge there after running away from his new foster home. Finally, the investigative report that defendant Lukhard relied upon was jointly signed by defendants Strane, Talley and Morris. These factual allegations are adequate grounds for a charge of unlawful conspiracy under § 1985. *See Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Since genuine issues of material fact remain with respect to plaintiff's allegations of conspiracy, summary judgment is inappropriate with respect to plaintiff's cause of action under § 1985.

An appropriate order will issue.

---

**5.** Plaintiff's § 1983 claim also includes allegations that the defendants have violated her rights under the Equal Protection Clause by discriminating against her on the basis of her race, sex and religious beliefs. As the defend- ants' memorandum in support of their motion for summary judgment did not address these allegations, summary judgment must of course also be denied as to these claims.