KATHERINE G. SEIBEL and MASON E. SEIBEL, and MASON E. SEIBEL as Administrator of the Estate of BARBARA KATHLEEN SEIBEL, Deceased, Plaintiffs-Appellants, *v.* ROBERT DAY KEMBLE, Defendant-Appellee, Third-Party Plaintiff-Appellant, and DARIUS H. AMJADI and KWONG YEN LUM, Defendants-Appellees, *v.* CITY AND COUNTY OF HONOLULU, Third-Party Defendant-Appellee

NO. 6546

CIVIL NO. 49530

JULY 14, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY OGATA, J.

This is an appeal brought by plaintiffs-appellants, Katherine G. Seibel and Mason E. Seibel, and Mason E. Seibel as administrator of

the Estate of Barbara Kathleen Seibel, deceased (hereinafter appellants), from an order of the Circuit Court of the First Circuit granting summary judgment for defendants-appellees, Robert D. Kemble, Darius H. Amjadi and Kwong Yen Lum (hereinafter appellees). In addition, appellee Kemble appeals the dismissal of his third-party complaint filed against the City and County of Honolulu (hereinafter City). We are asked to consider (1) whether appellees are entitled to immunity from civil suit for consequences resulting from the manner of executing their court appointment to examine and render a psychiatric opinion regarding the penal responsibility of Paul Abraham Luiz (hereinafter Luiz), and (2) whether the dismissal of the third-party complaint was proper. For the reasons set forth below, we affirm the orders granting summary judgment for appellees and dismissing the third-party complaint against the City.

I.

In early 1973, Luiz was charged with rape, sodomy and kidnapping of four separate complainants in Criminal Nos. 45405 and 45406. Shortly thereafter, while these charges were pending, Luiz began weekly treatment sessions with appellee Kemble. On September 11, 1973, by an order of the court, appellees, who are licensed physicians in this state specializing in psychiatry, were appointed to serve on a sanity commission pursuant to HRS § 704-404.[1] The court order provided that appellees were to examine

---

[1] HRS § 704-404 reads in pertinent part:

*Examination of defendant with respect to physical or mental disease, disorder, or defect.* (1) Whenever the defendant has filed a notice of intention to rely on the defense of physical or mental disease, disorder, or defect excluding responsibility, or there is reason to doubt his fitness to proceed, or reason to believe that the physical or mental disease, disorder, or defect of the defendant will or has become an issue in the case, the court may immediately suspend all further proceedings in the prosecution. If a trial jury has been empanelled, it shall be discharged or retained at the discretion of the court. The dismissal of the trial jury shall not be a bar to further prosecution.

(2) Upon suspension of further proceedings in the prosecution, the court shall appoint a State-employed physician or certified clinical psychologist designated by the director of health from within the department of health and two additional unbiased, qualified physicians, or one qualified physician and one

Luiz and report to the court the following: a description of the nature of the examination; a diagnosis of Luiz's mental condition including a description of his psychological process, predisposition to psychiatric illness and the severity and stress that will precipitate these illnesses; any psychiatric data regarding Luiz's past history, mental or physical, and Luiz's views on the events leading up to the crime and his arrest; an opinion on his capacity to understand the proceedings against him and to assist in his own defense; an opinion on whether Luiz had the capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense; the effect of Luiz's mental or physical disease, disorder or defect on his capacity to understand the wrongfulness of his conduct or to conform his conduct to the requirements of law; an opinion on whether Luiz had the capacity to form the requisite intent for the crimes charged; an opinion regarding the disposition of Luiz if he lacks the capacity to understand the proceedings against him or to assist in his own defense; and an opinion regarding the disposition of Luiz if he is insane or suffering from mental disease, disorder or defect and whether he is a danger to himself or to others and his present physical and mental condition.

The report of the sanity commission was submitted to the court on January 4, 1974. The appellees found that Luiz was suffering from " 'compulsive neurosis', with an associated and predisposing diagnosis of 'passive aggressive personality', as defined in D.S.M. II of the American Psychiatric Association." Despite this mental illness, appellees concluded that with continued treatment, it was unlikely that Luiz would be a danger to himself or to others. After numerous and extensive hearings, a judgment of acquittal on the ground of physical or mental disease, disorder or defect excluding responsibility was entered by the court on August 1, 1974, in Criminal Nos.

---

certified clinical psychologist, to examine and report upon the physical and mental condition of the defendant. In each case the court shall appoint no more than one certified clinical psychologist and at least one of the physicians appointed by the court shall be a psychiatrist. The court may order the defendant to be committed to a hospital or other suitable facility for the purpose of the examination for a period not exceeding thirty days, or such longer period as the court determines to be necessary for the purpose, and may direct that one or more qualified physicians retained by the defendant be permitted to witness and participate in the examination.

45405 and 45406.[2] Pursuant to its authority under HRS § 704-411, the court ordered Luiz released upon the condition that Luiz continue treatment with appellee Kemble.[3] About ten months later,

[2] The order granting Defendant's Motion for Judgment of Acquittal and for Conditional Release reads:

Defendant's Motion for Judgment of Acquittal having come on or before thie [sic] Court for hearing on March 7, 1974; and this Court having entered an Order Denying Motions for Judgment of Acquittal filed herein on April 11, 1974; and Defendant subsequently having filed a motion for Reconsideration of said Motions and Order denying the same on June 25, 1974; and this Court having held additional hearings on said Motion for Reconsideration on July 11, and 25, 1974; and this Court having considered the reports of the examiners and being satisfied that the defendant at the times of the conduct alleged suffered from a physical or mental disease, disorder or defect which substantially impaired his capacity to conform his conduct to the requirements of law and that such impairment was sufficient to exclude responsibility and good cause appearing therefor,

IT IS HEREBY ORDERED that Defendant's Motion for Judgment of Acquittal be and the same hereby are granted on the ground of physical or mental disease, disorder or defect excluding responsibility.

Based upon the reports filed by the examiners and medical evidence given at the hearings on Defendant's Motions for Judgment of Acquittal and for Reconsideration,

The Court finds that the Defendant is affected by physical or mental disease, disorder or defect and that he present a danger to himself or the person or property of others but that he can be controlled adequately and given proper care, supervision, and treatment if he is released on condition and good cause appearing therefor,

IT IS HEREBY ORDERED taht [sic] the defendant be released upon the condition that he continue his treatment under Dr. Robert D. Kemble and that he cause Dr. Kemble to report on the progress of his treatment by letter to this Court with a copy to the prosecuting attorney for the City and County of Honolulu on the first day of each month beginning September 1, 1974 and continuing until further ordered by this Court.

[3] HRS § 704-411 reads in pertinent part:

*Legal effect of acquittal on the ground of physical or mental disease, disorder, or defect excluding responsibility; commitment; conditional release; discharge; procedure for separate post-acquittal hearing.* (1) When a defendant is acquitted on the ground of physical or mental disease, disorder, or defect excluding responsibility, the court shall, on the basis of the report made pursuant to section 704-404, if uncontested, or the medical evidence given at the trial or at a separate hearing, make an order as follows:

. . . . .

(b) The court shall order the defendant to be released on such conditions as the court deems necessary if the court finds that the defendant is affected by physical or mental disease, disorder, or defect and that he presents a danger to himself or the person or property of others, but that he can be controlled adequately and given proper care, supervision and treatment if he is released on condition; or

. . . . .

Luiz killed Barbara Kathleen Seibel.[4]

Appellants seek damages from appellees for their negligent examination and diagnoses and failure to abide by the court order appointing them which permitted Luiz to be conditionally released by the circuit court. It is asserted that this negligence caused the death of Barbara Seibel on May 28, 1975.

Appellants specifically alleged in their complaint that appellees failed to exercise reasonable care in the manner of conducting their examinations and making their diagnoses which were incorrect and inadequate; that appellees negligently failed to use auxiliary services available to them in conducting their examination and substantiating their report as ordered by the court; that appellees were grossly negligent in finding that Luiz suffered from a severe case of compulsive neurosis but nevertheless concluded that with continued treatment Luiz would not likely be a danger to himself or to others; that appellees Lum and Amjadi failed to make adequate examinations using all available resources and failed to make an independent evaluation of Luiz's condition and dangerousness by relying substantially on appellee Kemble's opinion; that appellees undertook a duty to conduct their examination and make their report with due care knowing that the failure to exercise such care might result in danger to Luiz or others in the community. It was further alleged that as a direct and proximate result of appellees' failure of due care in conducting their examination and making their report, Luiz was free to and did kill Barbara Kathleen Seibel.

Appellee Kemble then filed a third-party complaint against the City and County of Honolulu for the City's failure to disclose to the court and appellee Kemble subsequent bad acts committed by Luiz. Specifically, appellee Kemble alleged that the City, through its agent the prosecuting attorney, was negligent in failing to inform the court or appellee Kemble of a sexual attack committed by Luiz on another woman twenty-five days after being conditionally released.

---

[4] On February 27, 1976, Luiz was found guilty by a jury for the murder of Barbara Kathleen Seibel. However, in the second half of a bifurcated trial, Luiz was acquitted by reason of insanity.

## II.

There is much uncertainty in the diagnosis and treatment of mental illness and in the prediction of future behavior.[5] As the court stated in *Hicks v. United States*, 511 F.2d 407, 415 (D.C. Cir. 1975):

A claim of negligence must be considered in light of the elusive qualities of mental disorders and the difficulty of analyzing and evaluating them. Exactitude is often impossible. The Supreme Court has recently noted "the uncertainty of diagnosis in this field and the tentativeness of professional judgment." Error and uncertainty considered alone must often be accepted without labeling them negligence. (Citations omitted.)

We must consider appellants' allegations in light of the elusive qualities of mental health diagnosis and treatment.

We must also evaluate appellants' allegations in light of the goal of treatment, recovery and rehabilitation of those afflicted with a mental disease, defect or disorder. A consequence of imposing liability on a doctor was recognized by the court in *Taig v. State*, 19 App. Div. 2d 182, 241 N.Y.S.2d 495, 496-97 (1963), which stated: "If a liability were imposed on the physician or the State each time the prediction of future course of mental disease was wrong, few releases would ever be made and the hope of recovery and rehabilitation of a vast number of patients would be impeded and frustrated."

In recognizing these concerns and the possibility of error, the concept of immunity has been applied to the mental health field. Under the immunity doctrine, it is implicitly recognized that there will be error made but "it is better to risk some error and possible injury from such error than not to decide or act at all." *Scheuer v. Rhodes*, 416 U.S. 232, 242 (1974).

We have examined the question of immunity previously and held that judges are absolutely immune from suit for their judicial actions. *State v. Taylor*, 49 Haw. 624, 425 P.2d 1014 (1967); *Gomez v. Whitney*, 21 Haw. 539 (1913). Legislators also have been accorded

---

[5] *See* St. George v. State, 283 App. Div. 245, 127 N.Y.S. 2d 147, *aff'd*, 308 N.Y. 681, 124 N.E.2d 320 (1954); Diamond, *The Psychiatric Prediction of Dangerousness*, 123 U. Pa. L. Rev. 439 (1974); Innis & Litwack, *Psychiatry and the Presumption of Expertise: Flipping Coins in the Courtroom*, 62 Calif. L. Rev. 693 (1974).

absolute immunity for actions taken within the scope of their duties. *Abercrombie v. McClung,* 55 Haw. 595, 525 P.2d 594 (1974). Executive officials have been granted only a qualified immunity. *Orso v. City & County of Honolulu,* 56 Haw. 241, 534 P.2d 489 (1975); *Runnels v. Okamoto,* 56 Haw. 1, 525 P.2d 1125 (1974); and *Medeiros v. Kondo,* 55 Haw. 499, 522 P.2d 1269 (1974).

The scope of protection afforded by this doctrine depends upon the kind of immunity granted.[6] Appellees argue that they are entitled to absolute judicial immunity which would protect them from any damage action in the performance of their duties. Under this theory, absolute immunity precludes the imposition of any liability on the alleged wrongdoers, regardless of how wrongful that person's conduct may have been.

Appellants argue that there should be no immunity at all. They further contend that if immunity exists, it should only be a qualified immunity. The appellants assert that certain behavior should not be protected. Appellants rely heavily on *Grimm v. Arizona Board of Pardons & Paroles,* 115 Ariz. 260, 564 P.2d 1277 (1977), and *Brown v. Rosenbloom,* 34 Colo. App. 109, 524 P.2d 626 (1974), *aff'd sub nom. Province v. Brown,* 188 Colo. 83, 532 P.2d 948 (1975), to support their claim. They argue that a qualified immunity provides reasonable protection from suit for officials performing their duties.[7]

We believe that the better position is to provide court-appointed psychiatrists absolute immunity from suit. In adopting this position,

---

[6] As the United States Supreme Court noted:
   The procedural difference between the absolute and the qualified immunities is important. An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity. The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial. See *Scheuer v. Rhodes,* 416 U.S. 232, 238-239 (1974); *Wood v. Strickland,* 420 U.S. 308, 320-322 (1975).
Imbler v. Pachtman, 424 U.S. 409, 419, n. 13 (1976).

[7] *See, e.g.,* Vickers v. Motte, 109 Ga. App. 615, 137 S.E.2d 77 (1964) (county commissioners); Hedgepeth v. Swanson, 223 N.C. 442, 27 S.E.2d 122 (1943) (sheriff); St. George v. State, *supra* (doctors in state hospital have no liability for honest error of professional judgment); Orso v. City and County of Honolulu, *supra* (prosecutor given qualified immunity); Runnels v. Okamoto, *supra* (city auditor and council members); Medeiros v. Kondo, *supra* (nonjudicial employee liable when acting maliciously or for improper purpose); Drake v. City of Rochester, 96 Misc. 2d 86, 408 N.Y.S.2d 847 (1978) (prosecutor has qualified immunity for activities beyond his quasi-judicial capacity).

we do not condone negligence by persons in the performance of their duties or their failure to abide by a court order. The grant of absolute immunity is not intended to permit the doctors to hide behind the judicial shield. Rather, our position is necessary to maintain the orderly administration of the judicial process.[8]

Judicial immunity is based on the overriding public policy that "judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray,* 386 U.S. 547, 554 (1967); *see, Stump v. Sparkman,* 435 U.S. 349 (1978); *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335 (1872).

Other reasons advanced for judicial immunity are: (1) the need to save time which would be spent defending suits; (2) avoid deterring competent persons from taking office; (3) the need for finality in the resolution of disputes; (4) existence of adequate alternative remedies; and (5) the unfairness of requiring an opinion and the exercise of judgment to which is given special deference and then subjecting that person to liability based on the opinion of another. *Grimm v. Arizona Board of Pardons and Paroles, supra* at 264-65, 564 P.2d at 1231-32.

The reasons underlying judicial immunity, especially the freedom and independence to act without apprehension of possible adverse consequences, apply equally to court-appointed officials. The court in *Drexler v. Walters,* 290 F.Supp. 150, 154 (D.Minn. 1968), stated:

> Further, Minnesota courts have long recognized the rule that judges and those acting in a judicial or quasi-judicial capacity are immune from civil liability for damages. The policy behind the rule is to insure that such officers will act upon their convictions free from any apprehension of possible consequences. The

---

[8] Although appellees would not be civilly liable for the consequences of their alleged negligent acts, the court is able to insure that its agents will be accountable for their conduct and actions. The court, in its discretion, has the authority to impose or recommend that numerous sanctions be imposed for negligent conduct. Some of the sanctions that could be imposed include appointing another doctor to serve on the panel, prohibiting the doctor from further service to the court and reporting that doctor's behavior to the medical boards for further action.

In this case, the court was satisfied that appellees acted in conformity with its order. Because no punitive action was taken by the court, the court believed appellees properly examined and drew the necessary conclusions as required.

desirability of such freedom of judicial action applies equally to court-appointed referees and receivers, and brings them within the cloak of judicial immunity. [Footnote and citation omitted.] Consequently, if court-appointed psychiatrists are not given the freedom to make difficult decisions, more and more persons will be institutionalized because of the possible adverse consequences. *Taig v. State, supra.*

Courts have held that court-appointed psychiatrists were absolutely immune from suit when evaluating and reporting to the court on the mental condition of a patient which results in wrongful commitment. *Duzynski v. Nosal,* 324 F.2d 924 (7th Cir. 1963); *Bartlett v. Weimer,* 268 F.2d 860 (7th Cir. 1959); *Synder v. Faget,* 295 Ala. 197, 326 So.2d 113 (1976); *O'Barr v. Feist,* 292 Ala. 440, 296 So.2d 152 (1974); *Cawthon v. Coffer,* 264 So.2d 873 (Fla. Dist. Ct. App. 1972); *Linder v. Foster,* 209 Minn. 43, 295 N.W. 299 (1940); *Schanbarger v. Kellogg,* 35 App. Div. 2d 902, 315 N.Y.S.2d 1013 (1970). These courts have provided various rationales to support the conclusion that court-appointed psychiatrists were entitled to the immunity accorded to their appointing judges.

For example, in *Schanbarger v. Kellogg, supra,* the New York court held that a medical examiner was entitled to absolute immunity in the conduct of a court-appointed psychiatric examination. Due to the examiner's position, the nature of his duties, the degree of his responsibility and the circumstances involved, the court found that the court-appointed official was acting in a quasi-judicial capacity, thus entitled to absolute immunity.

A like result was reached in *Bartlett v. Weimer, supra,* where the Court of Appeals for the Seventh Circuit affirmed the dismissal of an action brought against a court-appointed doctor who rendered an opinion regarding the mental health of appellant Bartlett. The court stated, "[A]ppellee was appointed and acted as an officer of the court to give his opinion as to the mental health of appellant; and while acting in such capacity, was protected by the same immunity extended to judges and other judicial officers." 268 F.2d at 862.

In *Cawthon v. Coffer, supra,* the plaintiff alleged that court-appointed doctors were negligent in examining and reporting on a person's competency. The Florida court held that court-appointed doctors were entitled to absolute immunity from suit for actions arising out of judicial proceedings.

The court in *Linder v. Foster, supra,* also held that the reasons advanced for judicial immunity applied to court-appointed doctors. The court went on to say:

> 2. Defendants Damas and Gray are physicians and surgeons. They were appointed by the court commissioner in accordance with the provisions of 2 Mason Minn. St. 1927, §§ 8958 and 8959, to examine plaintiff and report to the court as to her mental condition. They reported her to be insane, and on that report defendant Bennyhoff committed her to the asylum. It is clear that these defendants were quasi-judicial officers and that what they did was in the scope of their duties as such. That being so, they are within the protection of the rule and immune from suit.

209 Minn. at 48, 295 N.W. at 301.

We find very little difference between the facts in the above-cited cases and the facts of the instant case. The rule established in the above-cited cases is equally applicable here. The record shows that appellees derived their duties from true judicial proceedings and discharged them accordingly. Appellees examined and reported their findings on Paul Luiz to the court. Thus, appellees were arms of the court and performed a function integral to the judicial process. As arms of the court, appellees are entitled to the absolute immunity given to judges and other judicial officials. *E.g., Imbler v. Pachtman, supra* (state prosecutors in initiating and pursuing criminal cases); *Ashbrook v. Hoffman,* 617 F.2d 474 (7th Cir. 1980) (court-appointed commissioners in sale of realty); *Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1 (1st Cir. 1976) (court-appointed receivers); *Burkes v. Callion,* 433 F.2d 318 (9th Cir. 1970) (probation officers in criminal case); *Rankin v. Howard,* 457 F. Supp. 70 (D.Ariz. 1978) (guardianship); *Woolridge v. Commonwealth of Virginia,* 453 F. Supp. 1333 (E.D. Va. 1978) (probation officer doing family study).

In *Ashbrook v. Hoffman, supra,* the court held that court-appointed commissioners, due to their integral relationship to the judicial process as arms or instruments of the court, were entitled to absolute immunity. Since the commissioners were court-appointed, their duties defined by statute, and their report, which was reviewed by a court, led to a judicial decree of partition, the court found that the court-appointed commissioners merited absolute immunity.

Similarly, some courts have recognized that court clerks are

entitled to absolute judicial immunity in certain instances, although normally clerks receive only a qualified immunity. *Williams v. Wood,* 612 F.2d 982 (5th Cir. 1980); *Waits v. McGowan,* 516 F.2d 203 (3rd Cir. 1975). The *Williams* court stated:

> A clerk "may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge. Absolute immunity from damage action applies, only in a narrow range of actions, for clerks of court acting in a non-routine manner under command of court decrees or under explicit instructions of a judge. Damages will not be awarded for a clerk's actions of this type even if in bad faith or with malice. The rationale is that, in this limited group of functions, the clerk of the court acts as an arm of the judge and comes within his absolute immunity." [Citations omitted.]

612 F.2d at 985.

In the instant case, the order of September 11, 1973, sets forth the capacity in which the opinions of the appellees would be used in the court's decision. That order states in part:

> The judge *may use* this report in *his determination* under H.P.C. § 411 whether to discharge the Defendant from custody, conditionally release him or commit him to the custody of the director of health to be placed in an appropriate institution for custody, care and treatment.
>
> At no time, however, will this report or its findings or opinions be conclusive of the matter or in any way meant to deprive the Court of its responsibility under H.P.C. § 411 to make the determination as to the Defendant's responsibility and disposition subsequent to acquittal. . . . [Emphasis added.]

The order makes clear that appellees were only advisors or arms of the court. Their findings or opinions were not binding on the court since the ultimate decision regarding a defendant's criminal responsibility, competency or disposition subsequent to an insanity acquittal rests solely with the court.[9] *See* HRS § 704-411.

---

[9] Although we need not decide the issue here, even assuming appellees were negligent in executing the court order, it is doubtful that such negligence could be the proximate cause of Barbara Seibel's death. The court was not bound by appellees'

Another reason for providing absolute immunity to court appointees was aptly set forth in *Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno, supra.* In that case, the court held that court-appointed receivers were entitled to absolute immunity. In reaching this conclusion, the court stated at 547 F.2d at 3:

> At the least, a receiver who faithfully and carefully carries out the orders of his appointing judge must share the judge's absolute immunity. To deny him this immunity would seriously encroach on the judicial immunity already recognized by the Supreme Court. *It would make the receiver a lightning rod for harassing litigation aimed at judicial orders. In addition to the unfairness of sparing the judge who gives an order while punishing the receiver who obeys it, a fear of bringing down litigation on the receiver might color a court's judgment in some cases, and if the court ignores the danger of harassing suits, tensions between receiver and judge seem inevitable.* [Emphasis added; citation omitted.]

The above-stated reasons for imposing judicial immunity to a court-appointed receiver reflect our concerns on subjecting any court-appointed official to suit.

Additionally, failure to extend absolute immunity to appellees would produce a chilling effect upon acceptances of future court appointments. A psychiatrist cannot be compelled by the court to accept an appointment to a sanity commission. We foresee fewer acceptances of court appointments if such persons are exposed to liability. Court appointees would not want to be exposed to litigation and be forced to spend time and money defending themselves in court.

For the above-stated reasons, we hold that appellees, who were court-appointed psychiatrists and served as such, are entitled to the absolute immunity accorded to judges and other judicial officers.

---

report and it was within the discretion of the trial court to commit or conditionally release a person insanity acquitted. Thus, the judicial determination on sanity and subsequent disposition would serve as an intervening cause sufficient to preclude recovery by appellants. O'Barr v. Feist, *supra;* Whitcombe v. County of Yolo, 73 Cal. App. 3d 698, 141 Cal. Rptr. 189 (1977); Rhiver v. Rietman, 148 Ind. App. 266, 265 N.E.2d 245 (1970); Mezullo v. Maletz, 331 Mass. 233, 118 N.E.2d 356 (1954). Moreover, Barbara Seibel's death may not have been a foreseeable consequence of appellees' assumed negligence. Ajirogi v. State, 59 Haw. 515, 583 P.2d 980 (1978).

## III.

Turning to appellee Kemble's third-party complaint, we find no need to address the issues raised therein due to our holding that court-appointed psychiatrists were absolutely immune from liability for the consequences of executing their court appointment. *See* Part II *supra*. We affirm the order dismissing the third-party complaint against the City.

Affirmed.

*Allan Haley (Paul F. Cronin, L. Richard Fried, Jr.,* and *Evelyn B. Lance* on the briefs; *Cronin, Fried, Sekiya, Haley & Kekina* of counsel) for plaintiffs-appellants.

*John S. Edmunds* for defendant-appellee, third-party plaintiff-appellant Kemble.

*Stephen B. MacDonald (Cades Schutte Fleming & Wright* of counsel) for appellee Amjadi.

*Albert Gould (Gould & McKenzie* of counsel) for defendant-appellee Lum.

*Stanley Young (James E. Ross,* on the brief), Deputies Corporation Counsel, for third-party defendant-appellee, City & County of Honolulu.