441 P.2d 540

**Robert B. BARCON, Appellant,**

v.

**SCHOOL DISTRICT NO. 40, MIAMI AREA
SCHOOLS, MIAMI, Arizona
et al., Appellees.**

**No. 8360.**

Supreme Court of Arizona.

In Banc.

May 29, 1968.

W. Edward Morgan, Tucson, for appellant.

Harold A. Beelar, County Atty., Gila County, for appellee.

UDALL, Vice Chief Justice.

On October 28, 1963, pursuant to A.R.S. § 15–1302, an election was held in High School District No. 40, Gila County, Arizona, to determine whether a $100,000 bond series should be issued. On November 4, 1963, a canvass of the election results conducted by the Board of Trustees showed there were 272 undisputed "Yes" votes and 265 undisputed "No" votes.

On November 26, 1963, an election contest was filed by Robert B. Barcon, alleging that illegal votes were cast at said election; that there was an erroneous count of the illegal votes; that, because of these and other irregularities, the proposition which appeared to have been approved was, in fact, defeated. In answer to the complaint of the contestant, the School Board of High School District No. 40, through its Board of Trustees, did, on December 2, 1963, file an answer to the complaint in which it denied that the election had been illegally conducted or that ineligible electors had voted at the election. It alleged affirmatively that the election had in all respects been conducted in accordance with the law. Thereafter, the contestant petitioned the court to appoint a board of inspectors to inspect the ballots, and to make a report to the court of their findings.

The court appointed a board to make the inspection on December 11, 1963, on which date the board conducted a thorough and complete inspection of all ballots, individual affidavits filed by the electors, and the names that appeared on the official poll list of the electors who had voted. In their report to the court, the inspectors

found that 272 ballots were registered as "Yes" votes, 270 of which were considered valid and two to be questionable, and also that 265 ballots were registered as "No" votes, one of which was questionable. Six ballots which had "check marks" [√] or other identifying marks on them were determined to be irregular ballots and were subsequently admitted by the Board of Trustees to be void ballots.

The trial of this matter was held on January 23, 1963. The three ballots referred to in the inspector's report as questionable, two of them being "Yes" votes and one being a "No" vote, were received in evidence upon stipulation by the attorneys. Similarly, the court ruled that the affidavit of Naomi B. Lacy, which was executed by her at the time she voted, was a valid affidavit and that her "Yes" vote would be counted.

During the trial, forty-six married electors who had voted at the election were questioned concerning their qualifications to vote on the bond issue. At the conclusion of the questioning of these voting electors, the court found that eighteen electors were not qualified to vote and that their ballots were illegal. The record showed that eleven of the disqualified electors had voted a "No" vote and that seven of the disqualified electors had voted "Yes" votes.[1]

Also admitted in evidence was contestant's Exhibit 2, which contained the names of forty-one voting electors who, as veterans, had claimed an exemption for one-half of their community property. Although the electors named in the exhibit were not sworn and did not testify before the court, the attorneys for the parties stipulated that if these electors had been sworn to testify they would have testified that they did vote in the election; that each one of them had claimed an exemption for one-half of the tax that would be due on the community property; that they, or they and their wives, paid taxes on the other one-half of the community property, which payment was made jointly by the husbands and wives out of community funds and was paid on the wife's half of the community real estate. Thereupon, the contestant moved that the court set aside the election on the ground the electors whose names appear on contestant's Exhibit 2 were not eligible to vote since they had claimed their veteran's exemptions. Furthermore, they did not comply with the law which requires that electors be "real property taxpayers"[2] simply because of the fact that they with their wives were the owners of the community real estate and they jointly paid the tax on the wife's half of the community out of community funds.

The court denied the motion of the contestant, and at conclusion of the trial, found that the majority of the valid votes of the electors at the bond election were in favor of the bond proposition; that there was no showing at the trial of fraud

1. Below is a recapitulation of the votes cast:

| ("Yes" votes) | | ("No" votes) | |
|---|---|---|---|
| 270 — | Inspector's report | 265 | Inspector's report |
| 2 | Questionable (Yes) valid | 1 | Questionable (No) valid |
| 1 | Faulty affidavit (Yes) valid | | |
| 273 | "Yes" votes | 266 | "No" votes |
| 7 | Illegal "Yes" votes | 11 | Illegal "No" votes |
| 266 | Valid "Yes" votes | 255 | Valid "No" votes |

2. "Article 7, Constitution of Arizona
"Section 13. Questions upon bond issues or special assessments shall be submitted to the vote of real property tax payers, who shall also in all respects be qualified electors of this State, and of the political subdivisions thereof affected by such question."

or irregularities of a nature to invalidate the election; and that said election should be confirmed, and adjudged and declared valid.

From the judgment and decree of the lower court upholding the bond election, the contestant appealed. It is argued (1) that the court erred in allowing to be counted the forty-one votes of married men who had previously claimed a one-half veteran's exemption from the payment of real property taxes for the reason they are not "real property taxpayers" as required by Article 7, Section 13 of the Arizona Constitution, A.R.S., and they cannot become eligible to vote simply by volunteering to pay the tax on their spouse's share of the community property since he is not personally liable for the payment of said tax; and (2) that the court erred in ruling that the contestant must go beyond showing that a greater number of illegal votes had been cast than the margin of victory in favor of the winning side of the proposition for the reason that the only safe way to insure a fair election tally is to return the voters to the polls, anything less than this being unsatisfactory, unreliable and undemocratic.

The Board of Trustees responded with the argument that when the real property stands in the name of the husband and wife as community property and the tax is paid on such property by the husband and wife out of community funds, they are both taxpayers; that as taxpayers they both are qualified electors in the school district where the election is being held; and that each of them may cast one vote for or against a bond proposition.

The crucial question raised on this appeal is contestant's claim that the forty-one electors set out in contestant's Exhibit 2 were not qualified to vote. There is substantial evidence in support of the court's findings of fact in reference to all of the other issues raised during the trial, and, if we now determine that the forty-one electors referred to in contestant's Exhibit 2 were qualified electors and were eligible to vote at said election, then the court's finding that there were 266 valid "Yes" votes cast for the issuance of the bonds leaves no doubt but that the election was valid and legal in every particular. On the other hand, if the forty-one electors were not eligible to vote, then it is apparent that the election would have to be set aside since there would be no way, under the present state of the record, to determine how the forty-one electors voted. It therefore could not be definitely stated that a majority of the votes cast were in favor of the bond proposition.

There have been three cases decided by this Court in which the issues were somewhat related to the issues raised in this case. In Oglesby v. Poage, 45 Ariz. 23, 40 P.2d 90 (1935), the appellant was endeavoring to have his veteran's exemption cover both his own tax and the tax that would be due against the community one-half belonging to his wife. We held that where the husband had claimed an exemption, only his share of the community property and not that of his wife was exempt from taxation. Her share of the community property must pay its share of taxes regardless of the effect of the enforcement of the payment on the community.

In the case of Morgan v. Board of Supervisors, 67 Ariz. 133, 143, 192 P.2d 236, 243 (1948), the appellant, a soldier, claimed that his statutory tax exemption was equivalent to making him a taxpayer, and, therefore, he was a real property taxpayer and entitled to vote in a school district bond election. We held that a "real property taxpayer" within the meaning of Article 7, Section 13 of the Arizona Constitution means a person "subject to taxation on realty and regularly paying taxes thereon." It was our opinion that it was not "the intention of the framers of the Constitution to permit those who did not bear the 'burden of taxation' to be heard on the question of whether a bonded indebtedness should be incurred." No contention was made that the soldier had been regularly paying taxes either separately or as agent

of a community; his sole claim was that the exemption made him a taxpayer.

Finally, the case of Junker v. Glendale Union High School District, 73 Ariz. 20, 236 P.2d 1010 (1951), involved the issue of whether a purchaser of realty who is required by an installment sales contract to pay the taxes upon the property and who does pay them is a "real property taxpayer" within the constitutional provision making "real property taxpayers" eligible to vote at bond elections.

The Court stated that although the legal title was still in the vendors and was held as a security device and in trust for the vendees, the vendees had an enforceable contract and were the equitable owners of the realty. In applying the reasoning of *Morgan* that those only shall vote who are to pay the tax, who would be voting the tax upon themselves and not upon others, it was concluded that a vendee was a qualified elector within the requirements of the Constitution. We said:

> "The contract contemplates that the vendee shall eventually acquire the legal title and gives him the right to continue the payments, and ultimately demand the legal title. He assumes all the burdens of ownership, including the duty as between him and the vendor of paying the taxes."

> \* \* \* \* \* \*

> "The vendee is the only person eligible under the constitutional provision and should be accorded this privilege whether the property is assessed to him or not, as he is primarily affected by the results. He is the one who must pay the additional taxes and bear the burden of the lien thus created." 73 Ariz. at 22, 236 P.2d at 1011.

■■ In the instant case it was stipulated that the forty-one electors whose names appear on contestant's Exhibit 2, were veterans and that they had claimed veterans' exemptions which applied to one-half of the community property and that they did vote at the election; and that they, or they and their wives, paid taxes on the other half of the community property from community funds. In applying the reasoning of our previous holdings, it cannot be gainsaid that the forty-one challenged electors would pay and bear the burden of the tax on the one-half of community property. Although both husband and wife are owners of the community realty, the husband, as agent of the community, has the responsibility to dispose of the community personalty for the benefit thereof. In the instant case, it was imperative that the husband, from community funds, pay the tax to protect the community realty. Furthermore, since the tax was paid from community funds, the husband felt the burden of the tax, and of any additional tax he might vote upon himself. There is no statutory or constitutional minimum that a "real property taxpayer" must pay. For these reasons, we hold that the trial court decided correctly that the forty-one challenged electors in contestant's Exhibit 2 were qualified electors and entitled to vote.

The judgment of the trial court is affirmed.

McFARLAND, C. J., and STRUCKMEYER, BERNSTEIN, and LOCKWOOD, JJ., concur.