775 P.2d 1160

**Leo HENKE, a parole officer of the Department of Corrections, State of Arizona, Petitioners,**

v.

**SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF MARICOPA, Honorable Stephen A. Gerst, a judge thereof, Respondent Judge,**

**Craig KESSLER, as Guardian for Plaintiffs/Minor Children, Real Parties in Interest.**

No. 1 CA–SA 88–253.

Court of Appeals of Arizona, Division 1, Department D.

May 2, 1989.

As Corrected May 10, 1989.

Reconsideration Denied July 11, 1989.

Robert K. Corbin, Atty. Gen. by Ronald J. Greenhalgh, Asst. Atty. Gen., Phoenix, for petitioners.

Risner & Graham by Kenneth K. Graham, Tucson, for real parties in interest.

## OPINION

GRANT, Chief Judge.

This special action arises from a lawsuit filed against the state, the Department of Corrections (DOC) and a DOC parole officer by the guardian of three young children who were molested by a paroled child molester. The parole officer, Leo Henke, asks us to take jurisdiction of this special action and order the trial court to dismiss him from the lawsuit.

Henke raises two issues of first impression in Arizona:

1. Does a defendant in a section 1983 *state* court action have the same right to an immediate appeal of the trial court's denial of his motion to dismiss based on qualified immunity as a defendant has in a section 1983 *federal* court action?

2. Have the plaintiffs below (real parties in interest here) stated a proper claim under section 1983?

Henke also raises a third issue: that even if the plaintiffs can state a section 1983 claim, Henke is protected by qualified immunity. We need not address this issue because the plaintiffs cannot state a section 1983 claim.

## FACTS

After serving a sentence for child molesting, Lyle Crego was on parole having been released from prison on January 2, 1986.[1] His parole terms required that he live in an approved residence not close to schools, that he not live with anyone with small children, and that he use no drugs or alcohol. He told DOC officials that he planned to move into a former relative's mobile home. However, he actually moved into a

---

1. Crego was indicted on April 21, 1981, in Pima County for molesting three children under the age of 15. He was sentenced on July 21, 1981, to seven years in prison. On October 29, 1985, prison officials transferred Crego to the Southern Arizona Correctional Release Center. He then was released into the community on January 2, 1986.

small apartment with a woman, Susan Matthew, and her three minor children.[2] The plaintiff children allege that DOC officials never verified that Crego was living in the mobile home or that such a residence even existed.

Sometime late in January, Crego and Susan Matthew told Henke, Crego's parole officer, that Crego was living with Matthew and her children. Henke allegedly responded that Crego should move, but he took no action, even though he knew Crego was violating the terms of his parole.

On February 4, 1986, Crego told Henke he had moved to a motel. When Henke made an announced visit about a week later, Henke found Crego in a room without food or cooking facilities. The plaintiffs intimate that this indicated Crego was not living at the motel and should have further alerted Henke to take action.

On February 18, 1986, a relative of Susan Matthew's, Norma Williams, informed Henke that Crego was using drugs and molesting Matthew's children. On February 20, 1986, about seven weeks after Crego's release, Henke arrested Crego at Matthew's apartment.

After a dependency petition was filed, the juvenile court appointed a guardian ad litem for the children. The guardian then pursued the action against Henke and the state, claiming that Crego began molesting the children the day he moved into the apartment; that Henke knew Crego had violated his parole conditions by living with Matthew and her children; and that Henke took no action for two days even after he was directly told that Crego was molesting the children.

The complaint alleged gross negligence by all three defendants in failing to supervise and exercise control over Crego after his release as well as after actual notification of his parole violations. The guardian also alleged that the defendants' actions violated the children's 14th and 8th amendment rights and sought compensation under 42 U.S.C. § 1983.[3]

The trial court dismissed the gross negligence count against Henke and the constitutional-violation count against the state and DOC.[4] The court, however, denied Henke's motion to dismiss the section 1983 count against him.

Henke then filed this special action petition on November 25, 1988, seeking to overturn that denial. We granted his request for a stay of the trial, which was to have begun November 28, 1988.

## SPECIAL ACTION JURISDICTION

We take the unusual step today of accepting special action jurisdiction of a trial court's denial of a motion to dismiss.

A trial court's denial of a motion to dismiss or denial of a motion for summary judgment is a non-appealable, interlocutory order. *Engle Bros. Inc. v. Superior Court*, 23 Ariz.App. 406, 533 P.2d 714 (1975); C. Smith, *Civil Trial Practice* § 321, at 284 (1986). As a result, the only avenue for interlocutory appellate review is by special action. We follow a general policy, however, of declining jurisdiction when relief is sought to obtain review of orders denying motions to dismiss or for summary judgment. *Scottsdale Publishing Inc. v. Superior Court*, 159 Ariz. 72, 764 P.2d 1131 (1988); *United States v.*

2. The petition and response indicate only that Matthew's children are minors, but do not give their ages. We assume for the purposes of this special action that they are young enough to qualify as the "young children" with whom Crego was not to live.

3. The parties, in the petition and response, and the trial court orders refer to section 1983. The complaint, however, alleged violations of the children's 14th and 8th amendment rights under 42 U.S.C. § *1981*. The record does not indicate whether the plaintiffs amended their complaint. We dispose of this special action on the assump-

tion that the complaint included a section 1983 claim. Section 1981 is inapplicable to this case. To state a claim under that statute, the plaintiff must allege intentional racial discrimination in a contractual relationship. *See Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

4. The trial court dismissed the section 1983 claim against the state and DOC based on our decision in *Garcia v. State*, 5 Ariz.Adv.Rpt. 31 (1988), which held that the state is not a person under section 1983.

*Superior Court,* 144 Ariz. 265, 269, 697 P.2d 658, 662 (1985).

Our analysis in this case is not simply whether to take special action appellate review of the usual denial of a motion to dismiss in a civil case. Based on the right involved here, there is no way short of interlocutory review to review the trial court's alleged error before the primary benefit of Henke's qualified immunity is lost.

Henke contends that we must accept jurisdiction of this special action for two reasons. First, he argues that because the federal system allows interlocutory appeals of a trial court's denial of a motion to dismiss based on qualified immunity, the state must provide a parallel procedure. Second, he points out that the benefit of qualified immunity is freedom from trial, not merely freedom from liability. Therefore, he contends, if he is erroneously forced to stand trial, he has lost the benefit of immunity, even if he is found not liable. The plaintiffs state that they do not object to our taking jurisdiction because we have already stayed the trial.

■ In federal courts, section 1983 defendants may immediately appeal the district court's denial of their motions to dismiss or for summary judgment based on qualified immunity, as long as the issue turns on a question of law. *Mitchell v. Forsythe,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Because the benefit of qualified immunity is immunity from suit rather than a mere defense to liability, it is effectively lost if the case is erroneously permitted to go to trial. *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815, 86 L.Ed.2d at 425. Therefore, denial of a motion to dismiss based on qualified immunity is effectively unreviewable on appeal from a final judgment. Because of this, an order denying such a motion is a "final decision" within the meaning of 28 U.S.C. § 1291, which vests the federal courts of appeals with appellate jurisdiction over "final decisions." *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817, 86 L.Ed.2d at 424.

The *Mitchell* Court likened the district court's denial order in such cases to the denial of a defendant's claim of right not to stand trial on double jeopardy grounds; the defendant has been irreparably harmed even if found not guilty at the second trial. *See Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

The Court found that the denial of such motions fit the collateral-order doctrine established in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949):

> [A] decision of a district court is appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

*Mitchell,* 472 U.S. at 524–25, 105 S.Ct. at 2814, 86 L.Ed.2d at 424, quoting *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225–26, 93 L.Ed. at 1536.

A motion to dismiss or for summary judgment based on qualified immunity is conceptually distinct from the merits of the case, the *Mitchell* Court decided: ·

> All [an appellate court] need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

472. U.S. at 528, 105 S.Ct. at 2816, 86 L.Ed.2d at 426. The *Mitchell* rule on interlocutory appeals interpreted federal civil procedural law. When section 1983 cases are brought in state courts, however, state procedural rules apply as long as they do not obliterate the federal right. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); I. Bodensteiner and R. Levinson, *State & Local Government Civ-*

*il Rights Liability* §§ 10:01–10:04 (1987).[5]

■ We agree with the *Mitchell* Court's reasoning for allowing interlocutory appeals of motions to dismiss or for summary judgment based on qualified immunity. Our own supreme court has held for more than a decade that common-law tort immunity, whether absolute or qualified, protects from suit, not just liability. *Grimm v. Arizona Bd. of Pardons & Paroles,* 115 Ariz. 260, 564 P.2d 1227 (1977).[6] The U.S. Supreme Court has emphasized the importance of resolving qualified-immunity questions at the earliest possible stage to shield officers from the disruptive effects of broad-ranging discovery and effects of litigation. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Therefore, we conclude that a defendant in a section 1983 action should not be required to await final judgment in order to challenge a trial court's adverse ruling on the issue of immunity from suit.

With the special-action procedure at our discretionary disposal, and having adopted the Supreme Court's view of the benefits of qualified immunity in section 1983 cases, we cannot allow a state official to be forced to trial when the process can and should be aborted in its early stages.

**5.** The handful of state courts that have considered the issue of interlocutory review of denials of motions to dismiss or for summary judgment based on qualified immunity have divided with Texas and Illinois courts con, *Pizzato's, Inc. v. City of Berwyn,* 168 Ill.App.3d 796, 119 Ill.Dec. 583, 523 N.E.2d 51 (1988); *Noyola v. Flores,* 740 S.W.2d 493 (Tex.Ct.App.1987), and Massachusetts and Minnesota courts pro, thus allowing interlocutory appeals from denials of motions to dismiss based on qualified immunity. *Breault v. Board of Fire Comm'rs,* 401 Mass. 26, 513 N.E.2d 1277 (1987); *Anderson v. City of Hopkins,* 393 N.W.2d 363 (Minn.1986); *see also State v. Hogg,* 311 Md. 446, 535 A.2d 923 (1988).

Other courts have discussed but have not reached the question of appealability. *Jaggers v. Zolliecoffer,* 290 Ark. 250, 254, 718 S.W.2d 441, 443 (1986); *Allen v. Board of Ed.,* 106 N.M. 673, 675, 748 P.2d 516, 518 (1987).

**6.** State immunity statutes, such as those in Arkansas and New Mexico and Arizona's own A.R.S. § 41–621(I), are irrelevant to section 1983 discussions and therefore provide little help in determining the extent of the benefits of

## SECTION 1983 CLAIM

Henke argues that the plaintiffs failed to properly plead section 1983's two-pronged threshhold requirement. To state a claim under section 1983,[7] a plaintiff must allege that a person acting under color of state law deprived the plaintiff of a constitutional right. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 428 (1981); *Balistreri v. Pacifica Police Dep't,* 855 F.2d 1421, 1424 (9th Cir.1988). The first inquiry in any section 1983 action must be "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States. *Martinez v. California,* 444 U.S. at 289, 100 S.Ct. at 558, 62 L.Ed.2d at 488, citing *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

We read the children's complaint to allege two separate constitutional violations: that Henke breached a duty to protect them from bodily harm imposed by the due process clause of the 14th amendment and that Henke violated their 8th amendment rights. We assume that, by mentioning the latter amendment, they mean that Henke violated their right to be free of cruel and unusual punishment.

■ The 8th amendment claim is disposed of easily. Any person detained by

qualified immunity. Henke correctly relies on federal law to support his qualified immunity defense, even though this case is brought in state court. Conduct wrongful under section 1983 cannot be immunized by state law, even though the federal cause of action is brought in state court. *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). Therefore, although Arizona's Risk Management Act provides that state officials are immune from liability for tortious acts done in good faith, the federal standard of immunity from suit applies in section 1983 cases.

**7.** 42 U.S.C. § 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the person injured in an action of law, suit in equity, or other proper proceedings for redress.

government, as a criminal punishment, can challenge the conditions of confinement and treatment. *Civil Rights Liability of State & Local Governments,* § 1:12. The Supreme Court has limited application of this amendment under section 1983 to those people being punished as a result of a criminal conviction. *Ingraham v. Wright,* 430 U.S. 651, 667–68, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711, 728 (1977). The children in this case were neither detained nor convicted of criminal activity. As a result, they cannot state a claim for a violation of the 8th amendment under these facts.

As for the 14th amendment claim, this issue has been decided by the United States Supreme Court since the filing of this special action. The very question of whether a citizen injured by the violent acts of a third party not in state custody may state a section 1983 claim for relief against the state was answered in *DeShaney v. Winnebago Co. Dep't of Social Services,* —— U.S. ——, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). That case presented the issue of whether a "special relationship" between the state and the injured party creates a constitutional duty on the state's part that can be vindicated by section 1983.

*DeShaney* holds that only a person in the state's custody can maintain a section 1983 claim for injuries caused by a third party. Based on *DeShaney,* the plaintiffs here have no claim against the state or against Henke. Henke should therefore be granted relief in the form of dismissal of the section 1983 count.

## CONCLUSION

We accept jurisdiction of Henke's special-action petition and grant relief. We order the trial court to dismiss the section 1983 count against Henke.

KLEINSCHMIDT, P.J., and FIDEL, J., concur.