823 P.2d 696

**MARICOPA COUNTY, a body politic; the Arizona Department of Revenue, a department of the State of Arizona; Maricopa County Assessor; Maricopa County Board of Supervisors, et al., Petitioners,**

v.

**SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable William T. Moroney, a judge thereof, Respondent Judge,**

**FIRST INTERSTATE BANK OF ARIZONA N.A., Real Party in Interest.**

Nos. 1 CA–SA 91–156–TX, 1 CA–SA 91–157–TX, 1 CA–SA 91–158–TX and 1 CA–SA 91–159–TX.

Court of Appeals of Arizona, Division 1, Department T.

Dec. 31, 1991.

Helm & Kyle, Ltd. by John D. Helm and Roberta S. Livesay, Tempe, for petitioner Maricopa County.

Grant Woods, Atty. Gen. by Michael Kempner, Asst. Atty. Gen., Phoenix, for Dept. of Revenue.

Mark Hyatt Tynan, Phoenix, for real party in interest.

## OPINION

JACOBSON, Presiding Judge.

Maricopa County seeks special action review of the tax court's denial of the county's motion to dismiss four consolidated tax appeals brought by First Interstate Bank of Arizona N.A. (First Interstate), the senior lienholder on the properties. The issue raised is whether a senior lienholder is entitled to appeal from the valuation or classification of real property as a "taxpayer" or "owner" when that lienholder has paid the property taxes under protest and has begun foreclosure proceedings on the property as a result of the default of the record owner. Because we hold that a nonowner lienholder is not entitled under the statutory scheme to bring such appeals, we grant relief by ordering dismissal of these four tax appeals.

## FACTS AND PROCEDURAL HISTORY

First Interstate is the senior lienholder on each of the four separate parcels of real property involved in this case. All of the record owners have defaulted on their secured loans and have failed to pay the current property taxes.

The Maricopa County Assessor increased the valuations of each of the parcels for the 1990 tax year. The defaulting obligor-owners failed or refused to challenge the new valuations either administratively or judicially. First Interstate, as the senior lienholder, challenged the valuations, seeking refunds of property taxes that it claimed were erroneously paid as a result of the alleged valuation errors. At the time it filed these four identical tax appeals in superior court, First Interstate had initiated foreclosure proceedings on the properties, but those proceedings were not final.[1]

Maricopa County filed motions to dismiss the appeals for failure to state a cause of action, pursuant to Rule 12(b)(6), Arizona Rules of Civil Procedure, arguing that a security holder is not entitled to assert the right of appeal granted under A.R.S. § 42–177, as it is neither a "taxpayer" nor an "owner" of the property. First Interstate responded that because an improper valuation affected the future taxes and interest owing on the property, thereby potentially adversely affecting the security interest of its lien, it possessed a sufficient ownership interest to entitle it to both a statutory and a due process right of judicial review.

After consolidated oral argument in all four cases, the tax court denied Maricopa County's motion to dismiss, reasoning as follows:

> Maricopa County relies on language in the authorizing statutes which refers to the property owner and the taxpayer and claims a creditor is none of these. The creditor points out that the owner of the property is not able to pay the debt on the property, and consequently has no interest in whether or not current taxes are paid on the property. The creditor argues that an excessive valuation impairs its security, and, therefore, it should have standing.
>
> The Court is of the view that the legislature did not contemplate a dilemma such as [First Interstate] finds itself in. Therefore, the Court is of the view that the legislature made no attempt when it

drafted the relevant statutes to deal with the problem.

> The Court is also of the view that the legislature did not intend that property subjected to an excessive valuation by the assessing authority would be left with no one able to test such a valuation. *The Court holds, therefore, that, if there has been a default on the debt secured by the property, the defaulted creditor whose security interest constitutes the most senior lien among those defaulted has standing to appeal a property valuation.*
>
> IT IS THEREFORE ORDERED denying Maricopa County's Motion to Dismiss.
>
> By this ruling, the Court is not deciding that [First Interstate] is a proper party. In order for [First Interstate] to be a proper party, a default in its debt must have occurred before the time for filing the appeal in Superior Court, and it must have the senior security interest among all defaulted indebtedness.
>
> Cases have consistently held that a property owner for property tax appeal purposes is the person with the right to the beneficial interest in the property. Once a property owner has decided that he no longer has an interest in the property, then the beneficial interest shifts to someone else. In a circumstance as is presently before the Court, the Court holds that the beneficial interest shifts to the senior creditor with a right to foreclose.

(Emphasis added.)

Maricopa County filed these four special actions from the denial of its motions to dismiss, and this court consolidated them under cause no. 1 CA–SA 91–156–TX.

## DISCUSSION

### A. *Special Action Jurisdiction*

█ Although both parties have stipulated that special action jurisdiction is appropriate under these facts, we must undertake an independent evaluation for devi-

---

1. The pleadings indicate that First Interstate acquired ownership through trustee's deeds to these properties while the motions to dismiss were pending.

ating from the general rule that we will not review, by special action, denials of motions to dismiss. *See generally United States v. Superior Court*, 144 Ariz. 265, 697 P.2d 658 (1985). Here, the only issue raised is one of first impression, involves a pure issue of law, and is of statewide importance. Maricopa County points out that because only the tax court hears property tax appeals under our statutory scheme, the court is likely to follow its own precedent in other tax cases; thus, a swift appellate decision would provide immediate guidance on an issue that is likely to recur.[2] Furthermore, our determination that the tax court lacks jurisdiction to proceed with these four tax appeals would effectively terminate the litigation and avoid four costly and unnecessary valuation trials. Under these circumstances, we accept special action jurisdiction to consider this denial of the motions to dismiss. *See, e.g., Aetna Cas. & Sur. Co. v. Superior Court*, 161 Ariz. 437, 778 P.2d 1333 (App.1989) (issue of law that would limit further litigation); *City of Phoenix v. Superior Court*, 158 Ariz. 214, 762 P.2d 128 (App.1988) (statewide importance).

B. *Entitlement of Lienholder to Commence Property Tax Appeals*

■ The parties agree that a right to appeal from a property tax valuation or classification exists only to the extent granted by constitutional or statutory provision. *See County of Pima v. State Dep't of Revenue*, 114 Ariz. 275, 560 P.2d 793 (1977). The only disputed issue is whether the applicable statutory scheme[3] afforded a right of appeal to senior lienholders.

The specific applicable statutes are the following:

*Appeals directly to superior court*

*Any person* dissatisfied with the valuation or classification of *his property* as determined by the county assessor may, whether or not he files an appeal with the assessor, county board or state board, appeal to the superior court in the manner provided in § 42–177 on or before November 1.

A.R.S. § 42–246 (emphasis added).

*Appeal from state board of tax appeal*

*Any taxpayer* dissatisfied with the valuation or classification of *his property* as reviewed by the state board of tax appeals may appeal to the superior court in the manner provided by § 42–177 and not otherwise....

A.R.S. § 42–176 (emphasis added).

Portions of section 42–177, which supplied the procedural mechanisms for such an appeal, provided:

All taxes levied and assessed against property on which an appeal has been filed *by the owner* thereof shall be paid under protest prior to the date the tax becomes delinquent....

A.R.S. § 42–177(E) (emphasis added).

The filing and appearance fees ... shall be paid to the clerk of the court by *any taxpayer* appealing.

A.R.S. § 42–177(F) (emphasis added).

Maricopa County contends that these statutes confer the right to appeal a property tax valuation or classification only on the taxpayer/owner, and not on a lienholder who neither is obligated to pay taxes nor is a record owner. It argues that the ordinary meaning of both A.R.S. § 42–176 and § 42–246 requires at a minimum that the appellant be the owner of the property. *See County of Pima*, 114 Ariz. at 278, 560 P.2d at 796 (interpreting former A.R.S. § 124.02(D) and § 42–146, the predecessor of A.R.S. § 42–176(A)).

2. Counsel for First Interstate estimates an increase of thirty to forty percent in his current caseload if senior lienholders are allowed to bring tax appeals. Maricopa County estimates that this percentage would increase the County's caseload by 365 to 486 additional tax appeals a year.

3. Effective September 1, 1990, for tax years beginning with 1991, the Arizona legislature made

comprehensive changes in the administrative and judicial property tax appeals system. *See* 1990 Ariz.Sess.Laws, Ch. 360, §§ 3–14, 24. The four property tax appeals out of which these special actions arise are governed by the statutory scheme existing prior to the 1990 amendments; thus, all references to specific statutes in this opinion are to their pre-amendment versions.

First Interstate contends that an overview of the entire statutory scheme for property tax appeals supports its entitlement to commence a tax appeal. For example, it notes that "any interested person" can be heard by the Department of Revenue on Department-valued property. *See* A.R.S. §§ 42–143, –144.01, and –144.02. Additionally, county assessors must send annual valuation notices to "[e]very person who is the owner of record or who is the purchaser under a deed of trust or an agreement of sale of property which is by law valued by the assessor for placement on the roll...." A.R.S. § 42–221(D). Similarly, an agent may be designated to act, in relation to property valuation reviews by the county assessor, on behalf of any "person who owns, controls or possesses property valued by the county assessor...." A.R.S. § 42–221(J). First Interstate also offers in support for its broad interpretation the settled line of authority that no specific person is liable for taxes on a particular parcel, because property taxes are owed by the property, not its owner. *See Peabody Coal Co. v. Navajo County*, 117 Ariz. 335, 572 P.2d 797 (1977); *Santos v. Simon*, 60 Ariz. 426, 138 P.2d 896 (1943); *Pothast v. Maricopa County*, 43 Ariz. 302, 30 P.2d 840 (1934). The argument continues that therefore anyone having an interest in that property is a proper appellant.

■ We acknowledge that, in the context of bond elections, Arizona courts have given a broad interpretation to the meaning of "real property taxpayer," within the meaning of Article 7, Section 13 of the Arizona Constitution, by extending the right to vote to those who may not be the record owner of the property in question but who have a beneficial or equitable interest in that property. *See Barcon v. School Dist. No. 40*, 103 Ariz. 311, 441 P.2d 540 (1968) (husband with veteran's exemption from real property taxes was qualified as "real property taxpayer" to vote in a bond election because, as manager of the marital community, he paid his wife's half of the taxes out of their community property); *Junker v. Glendale Union H.S. Dist.*, 73 Ariz. 20, 236 P.2d 1010 (1951) (vendee under contract for sale of real property qualified as "real property taxpayer" to vote on bond issues or special assessments); *City of Phoenix v. State*, 60 Ariz. 369, 137 P.2d 783 (1943) (*accord*). However, we find these cases distinguishable on two bases. First, they consider the standing of a person with a beneficial or equitable interest in property to assert a constitutionally guaranteed right to vote, which is a greater interest than the assertion of a statutory grant of limited standing to litigate an appeal against a taxing authority of this state. Second, the pertinent statutes in this case require a "taxpayer" who is "dissatisfied with the valuation or classification *of his property*," A.R.S. § 42–176(A), or "any person dissatisfied with the valuation or classification *of his property*," A.R.S. § 42–246, or "[a]ny taxpayer dissatisfied with the valuation or classification *of his property*," A.R.S. § 42–204(E). We must interpret these statutes according to their usual and commonly understood meaning. *Prescott Newspapers v. Yavapai Community Hosp.*, 163 Ariz. 33, 38, 785 P.2d 1221, 1226 (App.1989). We believe the term "of his property," used in the context of these jurisdictional statutes, unambiguously refers to a record owner of real property.

■ As we have previously noted, the right to appeal from a property classification or valuation exists only by force of statute and is limited by the terms of that statute. *County of Pima*, 114 Ariz. 275, 560 P.2d 793. In *County of Pima*, our supreme court interpreted former A.R.S. § 42–146(A) (now A.R.S. § 42–176(A)), and construed the phrase "taxpayer dissatisfied with the valuation or classification of his property," to include only the "owners" of the property challenged. 114 Ariz. at 278, 560 P.2d at 796. Although *County of Pima* is factually distinguishable in that the parties attempting an appeal there were strangers to the property, while here the parties have an interest as lienholders, *County of Pima* guides our approach in this case by adopting the literal reading of the ordinary language used in these jurisdictional statutes. This literal reading resulted in the conclusion that the legislature intended that only the record property own-

er be entitled to bring a tax appeal from a property valuation or classification.

We also reject First Interstate's contention that the broader category of persons entitled to challenge a valuation at the administrative level indicates a legislative intent to include a broad class of parties at the level of a judicial appeal as well. First Interstate's reliance on the broad language of A.R.S. § 42–145(A) ("any interested person") is misplaced. First, that section deals only with those few properties valued directly by the Department of Revenue rather than by the county assessor. Second, although subsection A allows "any interested" person to appear concerning the valuation of Department-valued property at the administrative level before the Department, subsection D of the same statute narrows the right to appeal to the State Board of Tax Appeals to the *"property owner* who is not satisfied with the valuation of *his property* as determined by the Department." A.R.S. § 42–145(D) (emphasis added).

Likewise, First Interstate's reliance on A.R.S. § 42–221(D) is similarly misplaced. Subsection D requires the assessor to send notice of valuation to "[e]very person who is the owner of record or who is the purchaser under a deed of trust or an agreement of sale of property." Thus, the notice requirement only extends to legal title holders and beneficial title owners. Moreover, subsection E of the same statute grants the right to petition the assessor for a valuation change only to an *"owner of property,* which, in his opinion, has been valued too high or otherwise improperly valued." A.R.S. § 42–221(E) (emphasis added). A person who was unsuccessful before the assessor could choose either to proceed directly to the tax court pursuant to A.R.S. § 42–246 or appeal to the County Board of Equalization pursuant to A.R.S. § 42–241.01(A), which limits the appeal to "a petitioner in § 42–221," which refers back to "[a]ny *owner of property."* (Emphasis added.) The right to appeal a determination of the county board to the tax court or to the State Board of Tax Appeals is given only to a "person who is dissatisfied with the valuation or classification *of*

*his property."* A.R.S. § 42–245(A). Finally, the right to appeal from the state board of tax appeals to the superior court is afforded only to "[a]ny taxpayer dissatisfied with the valuation or classification *of his property . . . ."* A.R.S. § 42–176(A).

We believe that an overview of this statutory scheme indicates the legislature's intent to narrow the class of persons entitled to challenge tax valuations or classifications as the litigation proceeds from the administrative level to the level of judicial appeal. Maricopa County points out other evidence of this intent: for example, a plaintiff who prevails in a judicial appeal may recover attorneys' fees against the Department of Revenue pursuant to A.R.S. § 12–348, but no similar provision exists for a plaintiff prevailing in an administrative appeal; thus, the government is less at risk in an administrative appeal, and may afford access to a broader class of interested persons than those entitled to a judicial appeal.

Given this perceived intent to restrict the right of judicial appeal to the record owner of the property, we cannot agree with the tax court that the legislature included in these jurisdictional statutes the right of a creditor with a security interest when a debtor-owner has defaulted to judicially appeal a property valuation or classification. We simply find no specific and unequivocal authorization, which is necessary to the right to appeal a real property valuation or classification, that grants the right of appeal to a nonowner secured lienholder whose debtor has defaulted. *See County of Pima,* 114 Ariz. at 278, 560 P.2d at 796.

██ First Interstate contends, however, that to deny it the right of judicial appeal would violate due process. It argues that the due process right to challenge a tax paid under protest has been recognized in *Smotkin v. Peterson,* 73 Ariz. 1, 236 P.2d 743 (1951), and in *State Tax Commission v. Shattuck,* 44 Ariz. 379, 38 P.2d 631 (1934). In those cases, however, the due process right was afforded to persons who *owned* the property or business privilege taxed. As Maricopa County

points out, due process protection vests only when a person has a liberty or property interest that is a protectible interest. To constitute such a protectible interest,

> [A] person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Banks v. Arizona State Bd. of Pardons,* 129 Ariz. 199, 200, 629 P.2d 1035, 1036 (1981), quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In order to support a due process claim, First Interstate must have a substantial, *present* interest in the properties involved and not just a future, contingent interest. *See Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824).

In these four appeals, it is undisputed that First Interstate holds a present security interest in the properties that is entitled to due process protection. However, until that interest ripens into an ownership interest in these properties by foreclosure, the effect on that security interest by a tax increase is both speculative and contingent upon numerous factors. *See, e.g.,* A.R.S. § 33–813 (reinstatement possible until day before trustee's sale). We agree with Maricopa County that no legal certainty existed at the time these appeals were filed that the owners would not prevent foreclosure. Furthermore, no evidence was presented to the tax court that the owners were in any way prevented or precluded from bringing their own valuation challenges, had they chosen to do so, nor was any evidence introduced that the owners assigned to First Interstate, contractually or otherwise, a right to appeal their property valuations on their behalf. Nor is there any evidence that the value of the properties upon foreclosure would be less than the debt secured plus the increase in taxes.

We recently recognized the difference in the property interests owned by a secured lienholder and the obligor/property owner:

> In Arizona, the beneficiary of a deed of trust and his trustee do not stand on the same footing as the trustor to such a deed. While the trustee of the deed of trust "holds bare legal title" to the property, the Arizona Supreme Court has said "[n]ot withstanding the conveyance of 'title' in a deed of trust, the trustor remains free to transfer the property and continues to enjoy all other incidents of ownership."

> Because [the lienholder's] predecessor in interest "enjoy[ed] all other incidents of ownership," [the lienholder] did not stand in the same position as his predecessor at the time the right to appeal the property's valuation became ripe.

*Read v. Arizona Dep't of Revenue,* 166 Ariz. 533, 536, 803 P.2d 944, 947 (Tax 1991) (citations omitted). We concluded that the lienholder "had no constitutionally protected interest which could justify actual notice of the property's valuation. . . ." *Id.* We further recognized that the initiation of foreclosure proceedings did not change the nature of the lienholder's contingent ownership interest:

> Because of the uncertainty that a creditor who notices an intent to foreclose will become the owner of the property, as noted herein, the fact that a notice of sale has been recorded does not improve the creditor's constitutional standing.

*Id.* at 537–38, 803 P.2d at 948–49. Here too, the record owners still enjoyed the "incidents of ownership," including the statutory right to appeal their property valuations, at the time these appeals were filed. Under these facts, we find no due process interest to appeal that would attach to First Interstate's present security interest or its contingent, future, ownership interest in these properties.

## CONCLUSION

A senior lienholder who pays the property tax because the owner of real property has defaulted is not entitled, either by statute or by due process, to bring a judicial appeal to challenge a real property valuation. The jurisdictional statutes at issue in

these appeals afford the right of judicial appeal only to the property owner of record. Because the tax court did not have subject matter jurisdiction under these statutes to hear these appeals by the lienholder, Maricopa County's motions to dismiss should have been granted. The matters are remanded to the tax court with instructions to dismiss First Interstate's appeals.

Jurisdiction accepted; relief granted.

FIDEL, C.J., and GERBER, J., concur.