839 P.2d 1141

Ronn LAVIT and Ann Lavit, husband and wife, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable Edward C. Rapp, a judge thereof, Respondent Judge,

Duane E. OKKEN, a single person; Joseph C. Richter and Jane Doe Richter, husband and wife; Friedl, Richter & Buri, an Arizona partnership; William J. Friedl and Carol A. Friedl, husband and wife; Charles E. Buri and Susan L. Buri, husband and wife, Real Parties In Interest.

No. 1 CA–SA 92–0015.

Court of Appeals of Arizona, Division 1, Department D.

Oct. 1, 1992.

Renaud, Cook, Videan, Geiger & Drury, P.A. by Steven G. Mesaros and Thaine M. Crown, Jr., Phoenix, for petitioners.

Duane E. Okken, in pro. per.

Gallagher & Kennedy by Stephen H. Scott, Phoenix, for remaining real parties in interest.

Stevens & Liebow, P.C. by Howard P. Leibow, Phoenix, for amicus curiae Arizona Psychological Ass'n.

## OPINION

GERBER, Judge.

This special action arises from the trial court's denial of petitioners' motion for summary judgment. The sole legal issue is whether Ronn Lavit's (Lavit) psychologist role in a dissolution proceeding provides him with absolute judicial immunity. When we accepted jurisdiction we granted relief and indicated that an opinion would follow. This is that opinion. For reasons which follow, we conclude that absolute judicial immunity protects the role in question.

## SPECIAL ACTION JURISDICTION

■ We first explain why we take this case. A trial court's denial of a motion for summary judgment is a non-appealable, interlocutory order. *See Henke v. Superior Court*, 161 Ariz. 96, 98, 775 P.2d 1160, 1162 (App.1989); *Scottsdale Publishing, Inc., v. Superior Court*, 159 Ariz. 72, 74, 764 P.2d 1131, 1133 (App.1988). The sole remedy from this interlocutory order is special action. *Henke*, 161 Ariz. at 98, 775 P.2d at 1162. Except in very unusual cases, denial of summary judgment is not appropriate

for special action jurisdiction. *Ft. Lowell–NSS Ltd. Partnership v. Kelly*, 166 Ariz. 96, 99–100, 800 P.2d 962, 965–66 (1990); *United States v. Superior Court*, 144 Ariz. 265, 269, 697 P.2d 658, 662 (1985). There are exceptions to this general rule. The special nature of judicial immunity prompts us to take this case in its present posture. *Henke*, 161 Ariz. at 98–99, 775 P.2d at 1162–63 (court of appeals accepted special action jurisdiction from the trial court's denial of a motion to dismiss based on the doctrine of qualified immunity); *see also Maricopa County v. Superior Court*, 170 Ariz. 248, 823 P.2d 696 (App.1991) (court of appeals deviated from the general rule and accepted jurisdiction from a denial of a motion to dismiss). As *Henke* observed, there is no way short of special action to review the denial of immunity before the primary benefit of immunity is lost, that is, immunity from suit as well as liability. 161 Ariz. at 99, 775 P.2d at 1163. More practically, absolute judicial immunity defeats a suit at the outset. Even if Lavit were to be successful at trial, the benefit of immunity would be lost in the process of defending himself. Therefore, he has no adequate, plain and speedy remedy by direct appeal after trial. Ariz.R.P. Special Action 1.

Policy arguments in the amicus curiae brief of the Arizona Psychological Association also support our decision to accept jurisdiction. This case involves an issue of statewide importance for court-appointed psychologists and other professionals who perform quasi-judicial functions in helping courts decide cases. *See University of Ariz. Health Sciences Center v. Superior Court*, 136 Ariz. 579, 581, 667 P.2d 1294, 1296 (1983); *Matera v. Superior Court*, 170 Ariz. 446, 825 P.2d 971 (App.1992).

## FACTS AND PROCEDURAL HISTORY

After Ms. Okken filed for dissolution of her marriage with Duane Okken (Okken), her attorney Joseph C. Richter suggested to Okken that the parties contact a psychologist to assist in resolving child custody. The parties mutually agreed on Lavit. They entered into a "Stipulation for Entry of Temporary Order" which was submitted to the trial judge in the case. Its relevant portion is as follows:

*That Ronn Lavit, Ph.D. shall conduct a psychological examination of both Petitioner and Respondent at the earliest opportunity.* In conducting such examination, and as a part thereof, Dr. Lavit may require either or both parties to submit to such psychological testing as he, in his sole discretion, may direct. Further, Dr. Lavit may have access to all records regarding either party in the possession of any mental health professional and/or hospital or care facility in this State or any other State. Each party also agrees that Dr. Lavit may consult with any such mental health professional. Each party hereby expressly waives any physician/patient privilege, psychologist/patient privilege or any like privilege conferred by the law of this State or any other state to the extent necessary for Dr. Lavit to obtain and review records or to consult with such mental health professional. Each party shall, upon the request of Dr. Lavit, execute and deliver to him an authorization or release in a form satisfactory to Dr. Lavit and the mental health professional and/or hospital or care facility to whom it is directed for the release of records or information and/or for consultation. *The parties agree that Dr. Lavit, if called as a witness in these proceedings, including any further hearing for temporary orders, or at trial, may give testimony as an expert witness. The parties further agree that upon completion of his examination, Dr. Lavit shall prepare a written report and deliver a copy to counsel for each party.* It is further mutually agreed between the parties that subsequent to the receipt of Dr. Lavit's report, either party may petition the Court for a review and/or modification of the custody status of the minor child. The parties agree that the entry of this order regarding the custody of the minor child is without prejudice to the right of either party to seek a subsequent modification after the receipt of Dr. Lavit's report; ...

(Emphasis added).

The trial court adopted the stipulation as its own and signed the order:

The Court has read and considered the foregoing stipulation of the parties for the entry of temporary order and good cause appearing therefor,

IT IS ORDERED that the foregoing stipulation of the parties for the entry of temporary orders is adopted in its entirety as the order of this Court; ...

Lavit then conducted a psychological examination of both parties and issued a written report. The Okkens later stipulated to his child-custody recommendations. The trial court eventually incorporated the stipulated recommendations into the decree of dissolution. Lavit did not testify.

Okken later filed a thirteen-count complaint against petitioners. The essence of his complaint was that Attorney Richter, who represented Ms. Okken, had ten years previously represented Lavit in a personal matter which Lavit failed to disclose to Okken. Despite his stipulation to accept Lavit's recommendations, Okken alleged that Lavit's involvement with Richter resulted in Lavit making a biased custody evaluation favoring Ms. Okken.

The trial court dismissed eight counts of the complaint. One count was voluntarily withdrawn. Petitioners filed a motion for summary judgment on the remaining counts of intentional infliction of emotional distress, common law fraud and negligent misrepresentation. Petitioners' motion argued that judicial immunity protected Lavit in his role as a court-appointed psychologist. The trial court denied the motion without comment. This special action followed.

## DISCUSSION

■ Okken contends that Lavit is not entitled to such immunity. In his view, Lavit was privately employed by the parties merely to conduct a psychological examination to help them determine child custody. Petitioners respond that Lavit's psychological examination was performed pursuant to a court order and that it aided the trial court to reach its decision regarding

custody. Petitioners conclude that Lavit is entitled to absolute immunity.

■ Whether judicial immunity exists is a question of law for the court. *See Acevedo v. Pima County Adult Probation Dept.*, 142 Ariz. 319, 690 P.2d 38 (1984); *Green Acres Trust v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984). Petitioners properly raised the doctrine in their motion for summary judgment, so it is squarely before us.

■ Under the doctrine of absolute judicial immunity, judges avoid liability for judicial acts, even acts in excess of their jurisdiction or done with malice. *Acevedo*, 142 Ariz. at 321, 690 P.2d at 40; *Evans v. Copins*, 26 Ariz.App. 96, 546 P.2d 365 (1976) (city magistrate cloaked in judicial immunity for judicial acts erroneously carried out). The Arizona Supreme Court has extended absolute immunity to certain other court officials who perform functions integral to the judicial process. *Acevedo*, 142 Ariz. at 321, 690 P.2d at 40 (*citing Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir.1980) (commissioners appointed by the court to conduct a partition sale were sufficiently related to the judicial process to entitle them to absolute immunity); *Robichaud v. Ronan*, 351 F.2d 533, 536 (9th Cir.1965) (absolute immunity did not extend to a county attorney and deputy for unlawful acts which were not an integral part of the judicial process)).

Judicial immunity protects both the finality of judgments and judicial independence. *Grimm v. Arizona Bd. of Pardons & Paroles*, 115 Ariz. 260, 264, 564 P.2d 1227, 1231 (1977). In *Grimm*, the Arizona Supreme Court delineated additional reasons: (1) the need to save judicial time in defending suits; (2) the need for finality in the resolution of disputes; (3) to prevent deterring competent persons from taking office; (4) to prevent the threat of lawsuit from discouraging independent action; and (5) the existence of adequate procedural safeguards such as change of venue and appellate review. 115 Ariz. at 264–65, 564 P.2d at 1231–32.

■ These policy reasons apply equally to court-appointed officials such as psychologists and psychiatrists who assist the court in making decisions. Without immunity, these professionals risk exposure to lawsuits whenever they perform quasi-judicial duties. Exposure to liability could deter their acceptance of court appointments or color their recommendations. *Seibel v. Kemble*, 63 Haw. 516, 631 P.2d 173, 180 (1981). Threat of liability could undermine objectivity and independence. *Acevedo*, 142 Ariz. at 321, 690 P.2d at 40. Immunity removes the possibility that a professional who is delegated judicial duties to aid the court will become a "lightning rod for harassing litigation." *Id.* (*quoting Kermit Const. Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir.1976)).

The parties rather than the court chose Lavit and stipulated to his selection. That fact is not the end of the inquiry but its beginning. We need to examine Lavit's activities relating to the judicial function to determine whether he is entitled to immunity. Judicial immunity protects a non-judicial officer performing a function pursuant to a court directive related to the judicial process. *Acevedo*, 142 Ariz. at 321, 690 P.2d at 40; *see also Seibel*, 631 P.2d at 177–80 (court-appointed psychiatrists who performed a function integral to the judicial process were entitled to absolute immunity). "This application of judicial immunity may fairly be described as derivative in that the immunity would not exist except for the direct connection with the court." *Acevedo*, 142 Ariz. at 321, 690 P.2d at 40.

In determining whether absolute immunity applies, the focus is on the nature of the function performed, not on the identity of the actor. *Forrester v. White*, 484 U.S. 219, 230, 108 S.Ct. 538, 545–546, 98 L.Ed.2d 555 (1988). The question becomes not how the psychologist was first chosen but whether his activity is an integral part of the judicial process so that to deny immunity would disserve the broader public interest that non-judicial officers act without fear of liability. *Acevedo*, 142 Ariz. at 321, 690 P.2d at 40.

The language of the parties' stipulation indicates that Lavit was to act independently without allegiance to either party. The stipulation also states that if the parties could not agree on child custody after receiving Lavit's report, Lavit could then be called as an expert witness to assist the court in determining child custody. The stipulation does not require that Lavit be an expert witness for either party, but rather that he serve as an expert for the court. This stipulation enabled him to assist the court in rendering its child custody determination to the extent that his recommendation was incorporated in the court's order. In our opinion, this stipulation assured the independence of the expert witness as much as if the appointment had originated with the court.

*Acevedo* involved an action against a probation department and probation officers to recover for personal injuries suffered as a result of alleged negligent supervision of a probationer. The court recognized that judicial immunity had been extended to court officials other than judges, including probation officers. Whether a court official is protected by judicial immunity depends upon the nature of the activities performed and the relationship to the judicial function. *Acevedo* held that absolute immunity applies to a probation officer in the preparation of a presentence report because the report is an integral part of the sentencing process. 142 Ariz. at 322, 690 P.2d at 41; *accord Demoran v. Witt,* 781 F.2d 155 (9th Cir.1986) (probation officer preparing presentence report); *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 647 P.2d 713, 718–19 (1982) (probation officer in the preparation and presentation of presentence report). Absolute immunity also extends to an officer's actions necessary to implement the conditions of probation imposed by the court. These actions assist the court in making judicial decisions.

As *Acevedo* realizes, certain other actions of a probation officer do not fall within the ambient of protected activities; purely supervisory, clerical and administrative functions normally occur without a court's directive or benefit, and as such are not subject to immunity. 142 Ariz. at 322,

690 P.2d at 41. The court concluded that judicial immunity could not be invoked in *Acevedo* because the probation officers had not acted pursuant to a court's directive and had in fact ignored the specific direction of the court. *Id.*

We are not the first or the only court to recognize that non-judicial professionals enjoy absolute immunity when fulfilling quasi-judicial functions. Such immunity has been extended to psychiatrists and mental health experts assisting the court in criminal cases. *Moses v. Parwatikar,* 813 F.2d 891 (8th Cir.1987), *cert. denied,* 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987) (psychiatrist granted judicial immunity in a competency examination); *Bader v. State,* 43 Wash.App. 223, 716 P.2d 925 (1986) (state hospital granted judicial immunity for competency evaluation of criminal defendant), *clarified in Bruce v. Byrne–Stevens & Assoc. Eng. Inc.,* 113 Wash.2d 123, 776 P.2d 666 (1989). The consistent reasoning in these cases is that each professional performed a special task pursuant to a court directive, closely related to the judicial process, and impacting on a court decision.

Psychological expertise in child custody determinations fits this pattern. Other courts recognize that psychiatrists and psychologists performing court-ordered custody evaluations perform a judicial function and enjoy absolute immunity. *Williams v. Rapperport,* 699 F.Supp. 501 (D.Md.1988), *aff'd,* 879 F.2d 863 (4th Cir.1989), *cert. denied,* 493 U.S. 894, 110 S.Ct. 243, 107 L.Ed.2d 193 (1989) (psychiatrist and psychologist appointed during custody determination); *Doe v. Hennepin County,* 623 F.Supp. 982 (D.Minn.1985) (psychologist selected by parents from a list of court-approved psychologists had absolute immunity from civil rights liability for acts within the scope of her appointment); *S.T.J. v. P.M.,* 556 So.2d 244 (La.Ct.App.1990) (court-appointed psychologist who performed evaluations to aid court in determining child custody and visitation); *La-Londe v. Eissner,* 405 Mass. 207, 539 N.E.2d 538 (1989) (psychiatrist who per-

formed family evaluation in visitation proceeding).

Applying the reasoning in these cases to the facts before us, we conclude that Lavit is entitled to absolute immunity for his role in the child custody determination. His activities are protected because (1) at least to some extent, his evaluations and recommendations aided the trial court in determining child custody, and (2) his services were performed pursuant to a court order.[1] Together these two reasons elevate Lavit's role to that of a court-appointed psychologist and entitle him to immunity.

Lavit's appointment satisfies the criteria in *Acevedo* that absolute immunity extends to an activity integrated with the judicial process. 142 Ariz. at 322, 690 P.2d at 41. Implicit in A.R.S. § 25–335 is the recognition by our legislature that trial judges may find it necessary to consult with non-judicial professionals in resolving child custody disputes. Child custody determinations require an insight into family dynamics, the psycho-social needs of the child, and the abilities of each parent. The trial court's adoption of Lavit's recommendations indicates that his psychological expertise aided the court in reaching its final decision.

■ We note some limitations to the scope of this immunity. Lavit's role in this child custody proceeding differs from that of a private psychologist. Absolute immunity does not reach private psychologists working exclusively for a party and serving as an advocate only for that party or even attempting to help both parties reach a custody resolution. Such psychologists are not answerable to the court nor truly independent.

■ Narrow parameters also apply to the activities to which absolute immunity applies. All written reports and psychological examinations based on Lavit's clinical examinations and expertise are protected, of course, because they are an integral part of the judicial decision-making process. Activities which are ministerial and not part of the clinical and reporting functions or activities contrary to a court order are unprotected. *See Forrester v. White*, 484 U.S. 219, 230, 108 S.Ct. 538, 546, 98 L.Ed.2d 555 (1988) (judge did not have absolute immunity for dismissal of subordinate court employee); *Lynch v. Johnson*, 420 F.2d 818 (6th Cir.1970) (non-judicial acts of a judge are not entitled to judicial immunity); *Robichaud v. Ronan*, 351 F.2d 533, 537 (9th Cir.1965) (county attorney and deputy not protected for acts related to police function as opposed to judicial activity).

Extending absolute immunity to Lavit's activities serves the public policy behind the doctrine, by insuring that psychological recommendations rest on objective data without fear of lawsuits generated by the disenchanted or unpersuaded.

## CONCLUSION

No genuine issue of material fact remains for trial as to Lavit and he is entitled to judgment as a matter of law. The denial of summary judgment is reversed, and judgment is entered in favor of petitioners. This case is remanded to the superior court for other proceedings consistent with this opinion.

JACOBSON, J., concurs.

TAYLOR, Presiding Judge, dissenting.

Respectfully, I must dissent.

Judicial immunity, with its absolute cloak of protection against liability for judicial acts, should be jealously guarded and sparingly extended. Three areas of concern are readily apparent from the grant of judicial immunity to such as Lavit in this case. First, a plaintiff allegedly injured by another is deprived absolutely of pursuing

---

1. The trial court's authority for ordering such expert examination derives from Ariz.Rev.Stat. Ann. ("A.R.S.") § 25–335:

    A. In contested custody proceedings, and in other custody proceedings if a parent or the child's custodian so requests, *the court may order an investigation and report concerning custodial arrangements for the child.* The investigation and report may be made by the court social service agency, the staff of the juvenile court, the local probation or welfare department, or a private agency employed by the court for the purpose.
    [Emphasis added.]

his case in court. As stated by our supreme court, "immunity deprives individuals of a remedy for wrongdoing and should be bestowed only when and at the level necessary." *Grimm v. Arizona Bd. of Pardons and Paroles*, 115 Ariz. 260, 265, 564 P.2d 1227, 1232 (1977). Secondly, the *Grimm* court also recognized the deterrent value of holding one responsible for shocking or outrageous conduct. *Id.* at 266, 564 P.2d at 1233; *see also Chamberlain v. Mathis*, 151 Ariz. 551, 555, 729 P.2d 905, 909 (1986). Third, extension of judicial immunity into ever-widening circles presents, in my judgment, a very real threat to the protection given those who cannot decline to act judicially.

I believe judicial immunity to be inappropriate in this case. The essence of Okken's complaint against Lavit is not that he made some erroneous judicial decision for which he should be held accountable. Rather, Okken's complaint is that Lavit made a decision to accept employment with the parties without disclosing to Okken his long-term association with Richter, Mrs. Okken's attorney. The record reveals that association to include Richter representing Lavit in a prior child custody dispute, Richter and Lavit visiting each other's homes for social events or case preparation, and Richter acting as a witness at Lavit's wedding. Neither the decision to accept employment in this case nor the decision not to reveal the prior acquaintanceship between Richter and Lavit is judicial in nature. Those decisions predated any court appointment of Lavit and could not have been made under a cloak of judicial immunity.

Additionally, the stipulation entered into by the parties, and which, upon signing by the trial judge, became, by its terms, a "temporary order" of the court, provided only that

1. Lavit, ... shall conduct a psychological examination of both Petitioner and Respondent at the earliest opportunity....

2. Lavit, if called as a witness in these proceedings, ... may give testimony as an expert witness....

3. [U]pon completion of his examination, Dr. Lavit shall prepare a written report and deliver a copy to counsel for each party....

I do not quarrel with those cases which hold that a professional whose services are sought by the court for the purpose of assisting the court in resolving difficult issues temporarily be deemed part of the judicial family and entitled to judicial immunity. However, I see nothing in Lavit's performance which would set him apart as a judicial officer. The acts required of him were not judicial duties but rather duties imposed by a contract with the parties for his professional services and comparable with what is expected of any expert witness jointly selected by litigants. The seeking of the so-called "temporary order" of the court to enforce the contractual agreement between Lavit and the parties as set forth in the parties' stipulation is merely an effort to bootstrap Lavit under the umbrella of judicial immunity.

Moreover, I do not read in the stipulation (and order) that Lavit would "serve as an expert for the court," as found by the majority. The Court conducted no proceedings and made no findings relative to Lavit's qualifications as an expert. Rather, the parties simply stipulated that he may "give testimony as an expert witness."

The majority finds that Lavit's "activities are protected because ... at least to some extent, his evaluations and recommendations aided the trial court in determining child custody...." I believe this conclusion is flawed for several reasons. First, as previously stated, the activity complained of is Lavit's failure to disclose the prior association between him and Richter at the time he entered into the agreement with the parties. Second, the assertion that Lavit's evaluations and recommendations "aided" the court could be said of any expert called by a party in any case. Third, what Lavit's involvement did accomplish was to assist the *parties* to resolve the child custody issues and to reach a stipulated agreement which was later approved by the court. I believe that such involvement can only minimally be deemed

a part of the judicial process and is insufficient to support a rule eliminating the deterrent effect of liability and accountability for one's conduct and the right of victims to receive compensation for their injuries. *See Chamberlain v. Mathis*, 151 Ariz. at 558, 729 P.2d at 912. The underlying concept dictating restraint in granting immunity was expressed by our supreme court as follows: "There is perhaps no doctrine more firmly established than the principle that liability follows tortious wrongdoing; that where [such wrongdoing] is the proximate cause of injury, the rule is liability and immunity is the exception." *Stone v. Arizona Highway Comm'n*, 93 Ariz. 384, 392, 381 P.2d 107, 112 (1963).

The fact that professionals, such as Lavit, may become a "lightning rod for harassing litigation" following their involvement as an expert in litigation, seems to me to be no justification to grant judicial immunity unless their duties place them squarely within the judicial-making process. The risk and expense of defending one's actions is inherent in the business of offering on the open market one's professional services.

For all of the foregoing reasons, I would deny relief.